Brian P. Kinder (212332)
THE KINDER LAW GROUP, APC
19200 Von Karman Avenue, Fourth Floor
Irvine, California 92612
Telephone:   (949) 216-3070
Facsimile:   (949) 216-3074
Email:        bkinder@tklglaw.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS   VAN   BURREN,   a Colorado citizen,<br><br>              Plaintiff,<br><br>      v.<br><br>ENVII, INC., a California corporation, and DOES 1 - 100,<br><br>              Defendants. | Case No.:<br><br>COMPLAINT FOR:<br><br>(1) COUNTERFEITING (15 U.S.C. § 1114(1)(a));<br>(2) FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114);<br>(3) FEDERAL FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a)); AND<br>(4) CALIFORNIA COMMON LAW TRADEMARK INFRINGEMENT.<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT

Plaintiff Nicholas Van Burren ("Plaintiff"), by and through his counsel, hereby files this complaint against Defendant Envii, Inc. ("Defendant") as follows:

## JURISDICTION AND VENUE

1.     This is an action primarily for trademark counterfeiting and trademark infringement under the Federal, State and common laws with an amount in controversy exceeding seventy five thousand dollars ($75,000).

2.     This Court has original jurisdiction over the claims in this action pursuant to 15 U.S.C. § 1121 (Lanham Act), 28 U.S.C. § 1331 (Federal Question), 28 U.S.C. § 1332 (Diversity), and 28 U.S.C. § 1338 (Trademarks).

3.     This Court has supplemental jurisdiction over the claims in this action that arise under state statutory and common law pursuant to 28 U.S.C. § 1367(a)-(b) because the claims are so related to the Federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

4.     This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business within this judicial district and conducts substantial business within this judicial district that relates specifically to the unlawful activities at issue in this action. The harm suffered by Plaintiff flows directly from the business conducted by Defendant within this judicial district.

5.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) because all of the Defendants are subject to personal jurisdiction in this judicial district at the time this action is being commenced.

6.     Venue is also proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1391(c) because Defendant maintains its principal place of business within this judicial district and resides within this judicial district, a substantial part of the events or omissions by Defendants and the threatened and actual harm to Plaintiff that gives rise to the claims in this action occurred in this



judicial district, and a substantial part of the property that is the subject of the action is located in this judicial district.

## **PARTIES**

7.      Plaintiff Nicholas Van Burren is an individual and citizen of the state of Colorado.

8.      Upon information and belief, Defendant Envii, Inc. is, and at all times mentioned herein was, a corporation organized and existing under the laws of the State of California with a principal place of business in Garden Grove, California. Upon information and belief, the corporation was formed with the California Secretary of State on or about July 6, 2016.  Upon information and belief, the initial Statement of Information filed with the California Secretary of State on July 11, 2016 identified the officers of the company as Aldrich Hsu, CEO; Jacob Giverink, Secretary; and Jose Arteaga, Chief Financial Officer.  Upon information and belief, the Certificate of Amendment of Articles of Incorporation filed with the California Secretary of State on March 6, 2017 identified Aldrich Hsu as President and Jose Arteaga as Secretary.

9.      The true names and capacities of Defendant DOES 1 through 100, inclusive, whether individual, corporate, associate, or otherwise, are presently unknown to Plaintiff who therefore sues such Defendants by such fictitious names. Plaintiff will seek leave of this Court to amend this Complaint to show said Defendant's true names and capacities when same have been ascertained.

10.      Plaintiff is informed and believes and upon such information and belief alleges that each of the Defendants named herein as DOES 1 through 100, inclusive, were, and are in some manner responsible for the actions, acts, and omissions herein alleged, and for the damage caused by the Defendants and are, therefore, jointly and severally liable for the damages caused to Plaintiff.

11.    Plaintiff is informed and believes, and upon such information and belief, alleges that at all times mentioned herein, Defendant, was the agent, employee, and officer of each of the remaining Defendants and in doing the things herein alleged, were acting within the scope, course, and purpose of said agency or employment, and with permission and consent of each of the remaining Defendants.

12.    Plaintiff is informed and believes and upon such information and belief alleges that each of the Defendants, including DOES 1 through 100, inclusive, were, and at all times herein mentioned, acting in concert and in conspiracy with each and every one of the named Defendants.

**FACTUAL ALLEGATIONS**

**Plaintiff's Business**

13.    For nearly a decade, Plaintiff has been a leading innovator, manufacturer and retail seller of smoking articles, smoking devices, structural parts for smoking devices and smoking accessories, including, without limitation, electronic hookahs; smokeless cigar vaporizer pipes; and smokeless cigarette vaporizer pipes; electronic cigarettes, vaporizers, atomizers; chemical flavorings in liquid form (e-liquids) for use with electronic cigarettes, vaporizers, and atomizers, mechanical modification devices for use with electronic cigarettes, vaporizers, and atomizers, tanks, cartridges, cartomizers, pods and heating elements for use with electronic cigarettes, vaporizers, and atomizers as well as retail and online retail store services featuring the same ("Plaintiff's Goods and Services").

14.    Plaintiff has promoted and sold Plaintiff's Goods and Services with the trademark and trade name ENVY prominently featured in standard character, stylized and stylized with design formatives (hereinafter "Plaintiff's ENVY Mark"). Plaintiff first used Plaintiff's ENVY Mark on and in connection with Plaintiff's Goods and Services as early as 2008 and has used Plaintiff's ENVY Mark on and in connection with Plaintiff's Goods and Services continuously since the date of first

1  use.  Plaintiff's ENVY Mark is well known and recognized among consumers
2  within the relevant industry.

3      15.   Plaintiff's ENVY Mark is unique and distinctive and, as such,
4  designates a single source of origin. As a result of Plaintiff's continuous use of
5  Plaintiff's ENVY Mark, Plaintiff has acquired substantial goodwill in and to
6  Plaintiff's ENVY Mark.

7      16.   Plaintiff has promoted and sold Plaintiff's Goods and Services
8  featuring Plaintiff's ENVY Mark through both online and brick-and-mortar
9  channels of trade with sales occurring through online and brick-and-mortar locations
10 in every State in the United States of America.

11     17.   Plaintiff also operates an e-commerce website located at the domain
12 name <www.envycig.com> ("Plaintiff's Website").  Through Plaintiff's Website,
13 Plaintiff promotes and sells Plaintiff's Goods and Services under and in connection
14 with Plaintiff's ENVY Mark.  A true and correct copy of a page from Plaintiff's
15 Website as it appeared on January 30, 2018 at https://envycig.com/shop/envy-
16 vapors-ecig-accessories/evy-ego-battery/ is attached hereto as **Exhibit A**.

17     18.   Plaintiff has invested significantly to extensively advertise and promote
18 Plaintiff's Goods and Services featuring Plaintiff's ENVY Mark throughout the
19 United States, including, without limitation, advertising through regional radio,
20 newspapers, mailers and national trade magazines, online advertising through
21 www.youtube.com, social media websites, affiliate marketing programs, forum
22 posting, banner advertising, and review sites, as well as through attendance of
23 national, regional, and local trade shows. As a result of Plaintiff's extensive and
24 exclusive use, Plaintiff's ENVY Mark has developed significant goodwill in the
25 market and represents a valuable asset of Plaintiff.

26     19.   Plaintiff has invested significant resources to protect Plaintiff's ENVY
27 Mark, including, obtaining a trademark registration from the U.S. Patent and
28 Trademark Office.  Specifically, Plaintiff has obtained the following registration for

the ENVY trademark in a standard character format which will hereinafter be referred to as "The '824 Registration":

| MARK | REG. NO. | REG. DATE | PRODUCTS/SERVICES |
|------|----------|-----------|-------------------|
| ENVY | 4717824 | April 7, 2015 | electronic hookahs; smokeless cigar vaporizer pipes; and smokeless cigarette vaporizer pipe, in Class 34. |

20.    A true and correct copy of the certificate of registration for the '824 Registration[1] is attached hereto as **Exhibit B.**

## **Defendant's Wrongful Conduct**

21.    On information and belief, Defendant is a California corporation engaged in the business of promoting and selling products in direct competition with Plaintiff, including, without limitation, smoking articles, smoking devices, structural parts for smoking devices and smoking accessories, including, without limitation, *electronic hookahs; smokeless cigar vaporizer pipes; and smokeless cigarette vaporizer pipes; electronic cigarettes, vaporizers, atomizers; chemical flavorings in liquid form (e-liquids) for use with electronic cigarettes, vaporizers, and atomizers, mechanical modification devices for use with electronic cigarettes, vaporizers, and atomizers, tanks, cartridges, cartomizers, pods and heating elements for use with electronic cigarettes, vaporizers, and atomizers as well as retail and online retail store services featuring the same* ("Defendant's Products and Services").

22.    Defendant promotes and sells Defendant's Products and Services in connection with the trademark and trade name ENVII ("Defendant's ENVII Mark").

---

[1] The '824 Registration was initially issued in the name of Akrum Alrahib, but was subsequently assigned to Plaintiff by assignment dated March 20, 2015 and recorded with the U.S. Patent and Trademark Office on March 27, 2015.  A true and correct copy of the assignment is attached hereto as **Exhibit C**.


THE **KINDER** LAW GROUP
A Professional Corporation

COMPLAINT                                          5

On information and belief, Defendant generates revenue from the sale of Defendant's Products and Services under and in connection with Defendant's ENVII Mark.

23.     Defendant sells Defendant's Products and Services in connection with Defendant's ENVII Mark through, among other channels, websites located at the Internet domain names www.vapeenvii.com, www.venvii.com, and others.  Each of Defendant's known Internet domain names resolves to a single website operated by Defendant (the "Defendant's Website") which used, and continues to use, Defendant's ENVII Mark thereon. On information and belief, Defendant generates revenue through Defendant's Website.  A true and correct copy of the Defendant's Website as it appeared on January 30, 2018 is attached hereto as **Exhibit D**.  An examination of **Exhibit D** shows that the appearance of Defendant's ENVII Mark on Defendant's Website is as follows:



24.     On information and belief, Defendant has used and continues to use Defendant's ENVII Mark in connection with Defendant's Products and Services. Specifically, on information and belief, Defendant has used and continues to use Defendant's ENVII Mark in connection with the promotion and sale of  Defendant's Products and Services as well as in connection with the Defendant's Website.

25.     On September 13, 2016, Defendant filed U.S. Application Serial No. 87170244 ("the '244 Application") with the U.S. Patent and Trademark Office and sought to register Defendant's ENVII Mark in a standard character format for use in connection with "Electronic cigarette boxes; Electronic cigarettes" in International Class 34. A true and correct copy of the '244 Application is attached hereto as **Exhibit E**.  As set forth in the '244 Application, Defendant claims a first use date of the mark as August 1, 2016 – a date that is later than the date that the U.S. Patent

and Trademark Office issued the trademark registration for Plaintiff's ENVY Mark as set forth in The '824 Registration.

26.     On September 20, 2016, the U.S. Patent and Trademark Office issued to Defendant a Notice of Pseudo Mark that explained, in part, that "A PSEUDO MARK may be assigned to marks that include words, numbers, compound words, symbols, or acronyms that can have alternative spellings or meanings." Further, the notice explained that the Pseudo Mark for Defendant's ENVII Mark is ENVY. A true and correct copy of the Notice of Pseudo Mark is attached hereto as **Exhibit F**. Plaintiff believes, and on that basis asserts, that Defendant submitted nothing to the records of the U.S. Patent and Trademark Office objecting to or refuting the U.S. Patent and Trademark Office's statement in the Notice of Pseudo Mark.

27.     On December 16, 2016, the U.S. Patent and Trademark Office issued an Office Action to the '244 Application refusing registration to Defendant under Section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d) on grounds of a likelihood of confusion between Defendant's use of Defendant's ENVII Mark and Plaintiff's ENVY Mark, specifically, the mark that is the subject of Plaintiff's '824 Registration. A true and correct copy of the Office Action is attached hereto as **Exhibit G**.

28.     On June 16, 2017, Defendant submitted arguments in response to the U.S. Patent and Trademark Office refusal of registration. A true and correct copy of Defendant's response to the Office Action is attached hereto as **Exhibit H**. In arguing against the refusal of registration, Defendant argued:

"[Defendant's ENVII Mark] and the [Plaintiff's ENVY Mark] are not similar in sound. The audible differences between the marks are both obvious and numerous. An examination of the marks reveals that the [Plaintiff's ENVY Mark] is of two syllables of "ENVY" as opposed to the [Defendant's ENVII Mark], which contains three syllables of "ENVII". Thus, [Defendant's ENVII Mark] is properly pronounced as EN-VEE-AHY. For instance, radii, a common word used for the plural of radius, is properly pronounced "ray-dee-ahy." Denarii, a common Biblical word used for the plural of denarius, is properly pronounced "'dih-nair-ee-ahy." Genii, the plural for genius, is properly pronounced "jee-nee-ahy." Attached as Exhibit I are pages from



COMPLAINT                                                    7

dictionary.com showing the proper pronunciation of radii, denarii, and genii. Attached as Exhibit 2 are pages from Merriam-webster.com which further support Applicant's proposition of the proper pronunciation of radii, denarii, and genii. Attached as Exhibit 3 is a copy of Applicant's website vapeenvii.com, which shows that Applicant promotes its mark to be pronounced as three syllables (see upper left hand corner of the website.)

29.     Despite Defendant's representations to the U.S. Patent and Trademark Office to the contrary, upon information and belief, all individuals associated with Defendant corporation pronounced Defendant' ENVII Mark as two symbols.  On information and belief, Jose Arteaga appears in a video located at https://www.youtube.com/watch?v=qAzskUZkkyM wherein he pronounces Defendant's ENVII Mark as two syllables (i.e., en-vee) and phonetically identical to Plaintiff's ENVY Mark.  On information and belief, Brandon Nelson, an individual that Plaintiff believes and on that basis alleges to be association with Defendant corporation, appears in a video located at https://www.youtube.com/watch?v=VN2U01hAJn0 wherein he pronounces Defendant's ENVII Mark as two syllables (i.e., en-vee) and phonetically identical to Plaintiff's ENVY Mark.  On information and belief, Jacob Giverink appears in a video located at https://www.youtube.com/watch?v=LN-uITYLhKE&t=1s wherein he pronounces Defendant's ENVII Mark as two syllables (i.e., en-vee) and phonetically identical to Plaintiff's ENVY Mark.

30.     Despite Defendant's efforts to intentionally mislead the U.S. Patent and Trademark Office about the pronunciation of Defendant's ENVII Mark, the Examining Attorney at the U.S. Patent and Trademark Office nevertheless rejected Defendant's arguments and issued a Final Office Action on July 4, 2017.  In the Final Office Action, the Examining Attorney states that the refusal pursuant to Trademark Act Section 2(d) is repeated and made FINAL. A true and correct copy of the Final Office Action is attached hereto as **Exhibit I**.  Included with the U.S. Patent and Trademark Office's Final Office Action was a printout of Plaintiff's website.

31.     As a direct and proximate result of the foregoing, Defendant has been



on notice of the likelihood of confusion with Plaintiff's ENVY Mark since at least as early as December 16, 2016.  On information and belief, Plaintiff alleges that Defendant has been on notice of the likelihood of confusion with Plaintiff's ENVY Mark since even prior to the time when the U.S. Patent and Trademark Office put Defendant on notice.   Despite the foregoing, Defendant has willfully and intentionally continued to use Defendant's ENVII Mark knowing that such use was spurious and likely to cause confusion among ordinary consumers in the marketplace.

32.    On or about August 4, 2017, Plaintiff transmitted written notice to Defendant stating that the use of Defendant's ENVII Mark was likely to cause confusion.   Plaintiff demanded that Defendant cease use of Defendant's ENVII Mark.  Plaintiff further demanded that Defendant refrain from attending an industry trade show that was set to take place on August 25, 2017.  Defendant refused to comply with Plaintiff's demands.

33.    On information and belief, once Defendant received Plaintiff's demand to refrain from attending the industry trade show, Defendant again argued that Defendant's ENVII Mark was not pronounced in a manner similar to Plaintiff's ENVY Mark.  This time, however, Defendant's acknowledged that Defendant's ENVII Mark is comprised of two syllables.  However, Defendant focused on the stylized icon that precedes the word ENVII and argued that the icon is actually the letter V that thereby imbues the mark with a pronunciation of "vhen-vee." Defendant modified the images on Defendant's Website by modifying the appearance of Defendant's ENVII Mark from that shown on the left below to that shown on the right below:

    



34.   Upon information and belief, despite Defendant's numerous efforts to reinterpret the pronunciation of Defendant's ENVII Mark in a manner that seeks to avoid a finding of confusing similarity with respect to Plaintiff's ENVY Mark, Defendant's use of Defendant's ENVII Mark on Defendant's Products has at all times been in the manner shown in evidence of use that Defendant submitted with the '244 Application (**Exhibit E**) as shown on the left below.  A true and correct copy of the manner in which Plaintiff uses Plaintiff's ENVY Mark from **Exhibit A** is shown on the right below:

**Defendant's Use**          **Plaintiff's Use**

35.   Plaintiff is damaged by Defendant's unauthorized use of Defendant's ENVII Mark in connection with Defendant's Goods and Services because it is similar to and so resembles Plaintiff's previously used and not abandoned ENVY Marks, and the goods and/or services of the corresponding thereto are related in such a way that, it is likely that a potential consumer would be confused or mistaken or deceived as to the source of the parties' respective goods and/or services.

36.   Defendant's activities have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiff and the long-used ENVY Marks. Defendant's



COMPLAINT                                    10

activities have irreparably harmed, and if not enjoined, will continue to irreparably harm the general public who has an inherent interest in being free from confusion, mistake, and deception.

## FIRST CLAIM FOR RELIEF
## COUNTERFEITING IN VIOLATION OF FEDERAL LAW
### (15 U.S.C. § 1114(1)(a))

37.     Each of the above paragraphs of this complaint are incorporated by reference as part of this claim.

38.     The conduct of Defendant constitutes the knowing use of a counterfeit mark in violation of 15 U.S.C. § 1114(1)(a).

39.     Defendant has used and is using Defendant's ENVII Mark in connection with the advertising and selling of products in this district in such a manner as to create a likelihood of confusion, mistake, or deception among actual and prospective consumers, and said acts have damaged and impaired that part of goodwill symbolized by Plaintiff s Mark, to Plaintiff's immediate and irreparable damage.

40.     Defendant's unauthorized use of a spurious mark that is virtually identical to Plaintiff's previously registered mark in the manner alleged constitutes trademark counterfeiting within the meaning of 15 U.S.C. §1114(1)(a), entitling Plaintiff to remedies pursuant to Section 35 of the Trademark Act of 1946, 15 U.S.C. § 1117, including treble damages, and including statutory damages.

41.     Defendant had actual knowledge of Plaintiff's exclusive right to use Plaintiffs Mark when it engaged in the conduct complained of herein. Thus, Defendant has willfully and deliberately engaged in the aforesaid acts with intent to injure Plaintiff and to deceive the public.

42.     Defendant's acts of infringement have caused Plaintiff irreparable injury and loss of reputation. Unless enjoined by this Court, Defendant will continue

these acts of infringement to Plaintiff's immediate and irreparable damage.

43.    As a direct and proximate result of the conduct of Defendant, the Defendant has been unjustly enriched and Plaintiff has been damaged in an amount subject to proof at trial, but in excess of the jurisdictional minimum of this tribunal.

44.    Plaintiff has no adequate remedy at law and is entitled to a preliminary and permanent injunction enjoining Defendant and all of those acting in concert with Defendant from using, infringing upon or counterfeiting the trademarks owned by Plaintiff.

45.    As a further direct and proximate result of the conduct of Defendant, and this being an exceptional case pursuant to 15 U.S.C. § 1117, Plaintiff seeks Defendant's profits, damages sustained by Plaintiff, the costs of this action, reasonable attorney's fees, treble damages, an enhanced accounting, statutory damages upon election, and prejudgment interest.

## SECOND CLAIM FOR RELIEF
## FEDERAL TRADEMARK INFRINGEMENT
### (15 U.S.C. § 1114)

46.    Each of the above paragraphs of this complaint are incorporated by reference as part of this claim.

47.    Plaintiff's ENVY Mark is distinctive and entitled to a broad scope of protection as evidenced by, among other things, the registration on the Principal Register of the U.S. Patent and Trademark Office.

48.    Defendant's ENVII Mark is identical to Plaintiff's ENVY Mark in appearance, sound, meaning and commercial impression.

49.    The goods and services of both Plaintiff and Defendant are sold through the same channels of trade, including, without limitation, the internet.

50.    The goods and services of Plaintiff and Defendant are targeted toward the same end consumers, including, without limitation, consumers of electronic

1   cigarette products.

2        51.    Defendant's unauthorized use of Defendant's ENVII Mark in interstate

3 commerce in connection with Defendant's Goods and Services is likely to cause

4 confusion, including, without limitation, the mistaken belief that Defendant's Goods

5 and Services emanate from, are sponsored by, or are authorized by Plaintiff, when

6 they are not.

7        52.    The above-described acts of Defendant constitute infringement of a

8 registered mark in violation of 15 U.S.C. § 1114 in that Defendant has used in

9 connection with Defendant's Good and Services a mark which is likely to cause

10 confusion or mistake or to deceive the public into believing that Defendant's Goods

11 and Services are authorized or sponsored by, or are affiliated with Plaintiff, when

12 they are not, and has caused such goods and services to enter into interstate

13 commerce.

14        53.    Plaintiff has been damaged and is likely to be damaged in the future by

15 Defendant's infringement by reason of the likelihood that those who come into

16 contact with Defendant's unauthorized use of Defendant's ENVII Mark will be

17 confused as to the source, sponsorship, or affiliation of Defendant's Goods and

18 Services and will mistakenly believe that Defendant's Goods and Services are

19 affiliated with Plaintiff, when they are not. Plaintiff

20        54.    On information and belief, Defendant has unfairly profited from the

21 actions alleged herein and will continue to be unjustly enriched and until such

22 conduct is enjoined.

23        55.    By reason of Defendant's acts alleged herein, Plaintiff has and will

24 continue to suffer damage to his business reputation and goodwill.

25        56.    By reason of Defendant's acts alleged herein, Plaintiff has suffered and

26 will continue to suffer irreparable harm unless and until Defendant's conduct is

27 enjoined.

28   / / /



57.    Defendant's conduct has been intentional, willful, and in conscious disregard of Plaintiff's rights, with malice and oppression, and this being an exceptional case within the meaning of 15 U.S.C. § 1117, Plaintiff seeks Defendant's profits, damages sustained by Plaintiff, the costs of this action, reasonable attorney's fees, treble damages, an enhanced accounting, statutory damages upon election, and prejudgment interest.

### THIRD CLAIM FOR RELIEF
### FEDERAL FALSE DESIGNATION OF ORIGIN
#### (15 U.S.C. § 1125(a))

58.    Each of the above paragraphs of this complaint are incorporated by reference as part of this claim.

59.    Defendant's use in interstate commerce of Defendant's ENVII Mark, trade name and domain name is likely to cause confusion, or to cause mistake, or to deceive the relevant public that Defendant's Goods and Services are authorized, sponsored or approved by or are affiliated with Plaintiff when they are not.

60.    The above-described acts of Defendant constitute trademark infringement of Plaintiff's ENVY Mark and false designation of origin in violation of 15 U.S.C. § 1125(a), entitling Plaintiff to relief.

61.    Defendant seeks to unfairly profit from the actions alleged herein.

62.    By reason of Defendant's acts alleged herein, Plaintiff has suffered damage to the goodwill associated with Plaintiff's ENVY Mark.

63.    Defendant's activities have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiff and its long-used ENVY Marks.

64.    Defendant's activities have irreparably harmed, and if not enjoined, will continue to irreparably harm the general public who has an interest in being free from confusion, mistake, and deception.

/ / /

65.   By reason of Defendant's acts alleged herein, Plaintiff's remedy at law is not adequate to compensate for the injuries inflicted by Defendant. Accordingly, Plaintiff is entitled to preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

66.   By reason of Defendant's willful acts, as a further direct and proximate result of the conduct of Defendant, and this being an exceptional case pursuant to 15 U.S.C. § 1117, Plaintiff seeks Defendant's profits, damages sustained by Plaintiff, the costs of this action, reasonable attorney's fees, treble damages, an enhanced accounting and statutory damages upon election.

## FOURTH CLAIM FOR RELIEF
## CALIFORNIA COMMON LAW TRADEMARK INFRINGEMENT
### (California Common Law)

67.   Each of the above paragraphs of this complaint are incorporated by reference as part of this claim.

68.   The acts of Defendant complained of herein constitute trademark infringement in violation of the common law of California. Defendant has used in commerce, and continues to use in commerce, Defendant's ENVII Mark, trade name and domain name in connection with the promotion and sale of Defendant's Goods and Services and the operation of a website.

69.   Defendant's use in commerce is likely to cause confusion or mistake or to deceive as to the source of origin.

70.   On information and belief, Defendant, with full knowledge of Plaintiff's rights in Plaintiff's ENVY Mark, and of the valuable goodwill associated therewith, has committed the acts alleged herein willfully, with the intent to trade on, or in complete disregard of, Plaintiff's goodwill and the goodwill associated with Plaintiff's trademarks.

/ / /

71.     The above-described acts of Defendant constitute trademark infringement in violation of the laws of the State of California, entitling Plaintiff to relief.

72.     Defendant seeks to unfairly profit from the actions alleged herein.

73.     By reason of Defendant's acts alleged herein, Plaintiff has suffered damage to the goodwill associated with Plaintiff's ENVY Mark and has suffered irreparable harm.

74.     As a result of the foregoing alleged actions, Defendant has been unjustly enriched, and Plaintiff has been injured and damaged. Unless the foregoing alleged actions of Defendant are enjoined, Plaintiff will continue to suffer irreparable harm, injury and damages.

75.     As a result of Defendant's acts, Plaintiffs have been damaged in an amount not as yet determined or ascertainable. As a direct and proximate result of Defendant's acts, Defendant has obtained and continues to obtain gains, profits, and advantages, which will be proven at trial.

## **REQUEST FOR RELIEF**

NOW THEREFORE, Plaintiff respectfully requests judgment against Defendants, and each of them, as follows:

1.     The Court enter judgment against Defendant stating that Defendant has engaged in counterfeiting and violated and infringed the trademark rights of Plaintiff in and to Plaintiff's ENVY Mark in violation of 15 U.S.C. §§ 1114 and 1125(a);

2.     That this Court adjudge and declare that Defendant's actions alleged herein constitute counterfeiting, federal trademark infringement, and California common law trademark infringement;

3.     That Defendant be ordered to transfer to Plaintiff every domain name Defendant owns which is identical or confusingly similar to Plaintiff's ENVY Mark;

4.     That Defendant be ordered to account to Plaintiff for, and disgorge, all



COMPLAINT                                                    16

profits Defendant has derived, and pay all damages which Plaintiff has sustained, by reason of the unlawful acts complained of herein;

5.     That Defendant be ordered to pay Plaintiff's reasonable attorney fees, prejudgment interest, and costs of this action under 15 U.S.C. § 1117 and the California common law;

6.     That Defendant and Defendant's agents, partners, employees, and representatives and all persons acting in concert or in privity with any of them be temporarily and/or preliminarily and permanently enjoined from using Defendant's ENVII Mark or any other name, phrase or trademark confusingly similar to Plaintiff's ENVY Mark in connection with the sale and promotion of Defendant's Goods and Services or any other infringing product or service not authorized by Plaintiff;

7.     That Defendant be required by mandatory injunction under 15 U.S.C. Section 1118 and any other applicable statute or rule of common or decisional law to permanently cease use and distribution of, transfer to Plaintiff and/or deliver up for destruction, any and all labels, signs, packaging, products, advertising materials, web pages, video, social media, or things of any kind used in their business that display Defendant's ENVII Mark or any other names, phrases or trademarks that are confusingly similar to Plaintiff's ENVY Mark used in connection or association with Defendant's Goods and Services;

8.     That Defendant be directed to file with this Court and serve upon Plaintiff's counsel written reports under oath setting forth in detail the manner in which Defendant and Defendant's agents have complied with the mandatory injunction;

9.     That Plaintiff be awarded all profits received by Defendant as a result of their infringement of Plaintiff's trademark rights and that Defendant pay to Plaintiff all damages sustained by Plaintiff due to Defendant's infringement of Plaintiff's rights, and that all such awards be trebled;



1        10.    That Plaintiff be awarded its attorneys' fees, expenses and costs incurred

2 in connection with the case;

3        11.    That Plaintiff be awarded prejudgment interest and such other relief as

4 may be appropriate.

5

6                         Respectfully submitted,

7 Dated: February 2, 2018         THE KINDER LAW GROUP, APC

8

9                      By:                           

10                           Brian P. Kinder, Esq.
Attorney for Plaintiff
Nicholas Van Burren

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TKLG
THE KINDER LAW GROUP
A Professional Corporation

1

## **DEMAND FOR JURY TRIAL**

2

3     Pursuant to Fed. R. Civ. Proc. 38, Plaintiff demands a trial by jury on all
4  claims and issues triable to a jury in this action.

5

6                                          Respectfully submitted,

7  Dated: February 2, 2018          THE KINDER LAW GROUP, APC

8
                                    By: _____
9                                       Brian P. Kinder, Esq.
                                        Attorney for Plaintiff
10                                      Nicholas Van Burren

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



COMPLAINT                                      19

# EXHIBIT A

LOGIN / REGIS



Envy E-Cigarettes   Envy Tanks   Spider Silk   Trickster Wax Vapes   Envy Vapor Accessories   Envy E-liquid   ˅   About Envy



# ENVY EGO BATTERY

SKU: eGo Battery Categories: Envy ECig Batteries, Envy Vapor Accessories



$9.

QUANTITY

- 1 + GET IT N

REVIEWS (0)

## RELATED PRODUCTS



NIRVANA PCC KIT CLOSEOUT
$50.00 $19.95
GET IT NOW

DETAILS    SHARE



NIRVANA PCC KIT WITH DRIPPING ATOMIZER SPECIAL
$50.00 $99.95
GET IT NOW



ENVY KNIGHT™
$74.95 $49.95
GET IT NOW

<table>
<thead>
<tr><th>⌕<br>DETAILS</th><th>⤴<br>SHARE</th><th>⌕<br>DETAILS</th><th>⤴<br>SHARE</th></tr>
</thead>
</table>

Warning

Products sold on this site are not medical devices and are not intended to cure, treat or prevent any diseases or other conditions. These products do not claim any therapeutic benefits. Consult your physician before using products sold on this site or any other similar product. Immediately discontinue use of any product if you experience any negative symptom. Products sold on this site should used by those under the legal age for smoking in the state where purchase is made. Products sold on this site are not intended to administer medicinal or illegal products. The use of illegal products subject the user to severe fines, penalties, and/or imprisonment under the laws of your jurisdiction. The manufacturer is not responsible for any damage, personal injury, or any related claim resu from inappropriate, incorrect, or irresponsible use of these products. The statements made here have not been evaluated by the US Food and Drug Administration. Small parts can present a chokin hazard. Keep out of reach of children and pets.

Copyright 2017 – Envy® Electronic Cigarettes: 8821 Harlan Street, Suite 1, Westminster, Colorado, 80031

HOME // PRIVACY // TERMS AND CONDITIONS // FAQS // CONTACT US
STORY // CONT.

# EXHIBIT B

# United States of America

### United States Patent and Trademark Office

# Envy

**Reg. No. 4,717,824**

**Registered Apr. 7, 2015**

ALRAHIB, AKRUM (UNITED STATES INDIVIDUAL)
25950 ACERO, STE 210
MISSION VIEJO, CA 92691

**Int. Cl.: 34**

FOR: ELECTRONIC HOOKAHS; SMOKELESS CIGAR VAPORIZER PIPES; AND SMOKELESS CIGARETTE VAPORIZER PIPE, IN CLASS 34 (U.S. CLS. 2, 8, 9 AND 17).

**TRADEMARK**

FIRST USE 7-8-2013; IN COMMERCE 7-8-2013.

**PRINCIPAL REGISTER**

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

SN 86-189,080, FILED 2-10-2014.

JULIE GUTTADAURO, EXAMINING ATTORNEY



Director of the United States
Patent and Trademark Office

# EXHIBIT C

**900319923    03/27/2015**

Form **PTO-1594** (Rev. 12-11)
OMB Collection 0651-0027 (exp. 04/30/2015)

U.S. DEPARTMENT OF COMMERCE
United States Patent and Trademark Office

RECORDATION FORM COVER SHEET
# TRADEMARKS ONLY

To the Director of the U. S. Patent and Trademark Office: Please record the attached documents or the new address(es) below.

**1. Name of conveying party(ies):**
Akrum Alrahib

[✓] Individual(s)        [ ] Association
[ ] Partnership          [ ] Limited Partnership
[ ] Corporation- State:_____
[ ] Other_____

Citizenship (see guidelines) United States

Additional names of conveying parties attached?  [ ] Yes [✓] No

**3. Nature of conveyance/Execution Date(s) :**

Execution Date(s) 03/25/2015

[✓] Assignment          [ ] Merger
[ ] Security Agreement  [ ] Change of Name
[ ] Other_____

**2. Name and address of receiving party(ies)**

Additional names, addresses, or citizenship attached?  [ ] Yes [✓] No

Name: Nicholas Van Burren

Street Address: 4457 West 110th Cir.

City:     Westminster

State:    CO

Country: USA            Zip: 80031

[✓] Individual(s)  Citizenship  United States
[ ] Association    Citizenship _____
[ ] Partnership    Citizenship _____
[ ] Limited Partnership  Citizenship _____
[ ] Corporation  Citizenship _____
[ ] Other _____  Citizenship _____

If assignee is not domiciled in the United States, a domestic
representative designation is attached: [ ] Yes  [ ] No
(Designations must be a separate document from assignment)

**4. Application number(s) or registration number(s) and identification or description of the Trademark.**

A. Trademark Application No.(s)        Text
86189080

B. Trademark Registration No.(s)

Additional sheet(s) attached? [ ] Yes [✓] No

C. Identification or Description of Trademark(s) (and Filing Date if Application or Registration Number is unknown):
Envy

**5. Name & address of party to whom correspondence concerning document should be mailed:**
Name: Tatum S. Hilmoe

Internal Address:_____

Street Address: 515 S. Flower St, 36th FL

City: Los Angeles

State: CA            Zip: 90071

Phone Number: 800.941.4807

Docket Number:_____

Email Address: thilmoe@hilmoelaw.com

**6. Total number of applications and registrations involved:**

1 Application

**7. Total fee** (37 CFR 2.6(b)(6) & 3.41)  $ 40

[ ] Authorized to be charged to deposit account
[✓] Enclosed

**8. Payment Information:**

Deposit Account Number _____
Authorized User Name _____

**9. Signature:**

_____        03/31/3015
Signature                    Date

Tatum S. Hilmoe              Total number of pages including cover
Name of Person Signing       sheet, attachments, and document: 3

Documents to be recorded (including cover sheet) should be faxed to (571) 273-0140, or mailed to:
Mail Stop Assignment Recordation Branch, Director of the USPTO, P.O. Box 1450, Alexandria, VA 22313-1450

TRADEMARK ASSIGNMENT

Whereas, Akrum Alrahib, an individual with offices at 25950 Acero, Ste 210, Mission Viejo, CA 92691 ("Assignor"), has adopted, used and is using in its business in connection with the sale and distribution of electronic hookahs, electronic cigarettes, vaporizers and ancillary items the trademark ENVY ("Trademark");

Whereas Assignor is the owner of the following U.S. federal trademark application (the "Application")

| Mark | Serial No. | Registration Date |
|------|-----------|-------------------|
| Envy | 86/189,080 | Pending |

Whereas, Nicholas Van Burren ("Assignee"), an individual with offices at 4457 West 110th Cir, Westminster, CO 80031 is desirous of acquiring all right, title and interest in and to the Trademark and the Application;

Now therefore, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Assignor sells, assigns and transfers to Assignee, effective March 20, 2015, the entire right, title and interest, whether statutory or at common law, in and to the Trademark, and all causes of action for any and all past infringement of the rights being assigned herein and the right to retain the proceeds relating to those infringements.

Assignor agrees to execute any further papers and to do such other acts as may be necessary and proper to vest full title in and to the Trademark and the Application and other corresponding rights in the Assignee.

Date: March 20, 2015                                    By: _____
                                                              Akrum Alrahib

**EXHIBIT D**



FREE SHIPPING ON ALL DOMESTIC RETAIL ORDERS OVER $35

HOME    E-LIQUID ⌄    DEVICES ⌄    ATOMIZERS ⌄    ACCESSORIES    VIDEOS ⌄    CONTACT

try

FEATURED

Please leave a message and we will get back to you very shortly! ✉



*Limited Edition* FITT Starter Kit

**Sold Out**



Baby Ness Pre-Order + Free Artisan RTA

(04/01/18 Expected Ship Date)

**$65.99**



FITT Starter Kit

**Sold Out**



Loch Ness/Terra Combo Kit

**$39.99** *$99.99*

Please leave a message and we will get back to you very shortly! ✉

MORE PRODUCTS







Artisan RTA
**$45.99**

Heretic
*from* **$84.99**

Kilted RDA
**$59.99**

Please leave a message and we will get back to you very shortly! ✉



# EXHIBIT E

Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number.
PTO Form 1478 (Rev 09/2006)
OMB No. 0651-0009 (Exp 02/28/2018)

# Trademark/Service Mark Application, Principal Register

**Serial Number: 87170244**
**Filing Date: 09/13/2016**

## The table below presents the data as entered.

| Input Field | Entered |
|---|---|
| **SERIAL NUMBER** | 87170244 |
| **MARK INFORMATION** | |
| *MARK | ENVII |
| **STANDARD CHARACTERS** | YES |
| **USPTO-GENERATED IMAGE** | YES |
| **LITERAL ELEMENT** | ENVII |
| **MARK STATEMENT** | The mark consists of standard characters, without claim to any particular font, style, size, or color. |
| **REGISTER** | Principal |
| **APPLICANT INFORMATION** | |
| *OWNER OF MARK | Envii, Inc. |
| *STREET | 11362 Glen Cove Dr. |
| *CITY | Garden Grove |
| *STATE (Required for U.S. applicants) | California |
| *COUNTRY | United States |
| *ZIP/POSTAL CODE (Required for U.S. applicants) | 92843 |
| **PHONE** | 714-273-7682 |
| **EMAIL ADDRESS** | joser123123@gmail.com |
| **LEGAL ENTITY INFORMATION** | |
| **TYPE** | corporation |
| **STATE/COUNTRY OF INCORPORATION** | California |
| **GOODS AND/OR SERVICES AND BASIS INFORMATION** | |
| **INTERNATIONAL CLASS** | 034 |
| *IDENTIFICATION | Electronic cigarette boxes; Electronic cigarettes |
| **FILING BASIS** | SECTION 1(a) |
| FIRST USE ANYWHERE DATE | At least as early as 08/01/2016 |
| FIRST USE IN COMMERCE DATE | At least as early as 08/01/2016 |
| SPECIMEN FILE NAME(S) | \\TICRS\EXPORT17\IMAGEOUT 17\871\702\87170244\xml1\ RFA0003.JPG |

| | |
|---|---|
| | \\TICRS\EXPORT17\IMAGEOUT 17\871\702\87170244\xml1\ RFA0004.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT 17\871\702\87170244\xml1\ RFA0005.JPG |
| **SPECIMEN DESCRIPTION** | Three Specimens are provided: (1) black and yellow box displaying mark with electronic cigarette still within the interior of the box; (2) specimen shows the black anterior view of the box with the interior box pulled out showing again the website, and (3) specimen shows the interior of the box holding the electronic cigarette next to the exterior box with displaying the mark. |

## ATTORNEY INFORMATION

| | |
|---|---|
| **NAME** | David Yu |
| **ATTORNEY DOCKET NUMBER** | ENVII WORD |
| **FIRM NAME** | Ardent Law Group, P.C. |
| **STREET** | 2301 Dupont Dr., Suite 510 |
| **CITY** | Irvine |
| **STATE** | California |
| **COUNTRY** | United States |
| **ZIP/POSTAL CODE** | 92612 |
| **PHONE** | 9498639782 |
| **FAX** | 9498639783 |
| **EMAIL ADDRESS** | dyu@ardentlawgroup.com |
| **AUTHORIZED TO COMMUNICATE VIA EMAIL** | Yes |

## CORRESPONDENCE INFORMATION

| | |
|---|---|
| **NAME** | David Yu |
| **FIRM NAME** | Ardent Law Group, P.C. |
| **STREET** | 2301 Dupont Dr., Suite 510 |
| **CITY** | Irvine |
| **STATE** | California |
| **COUNTRY** | United States |
| **ZIP/POSTAL CODE** | 92612 |
| **PHONE** | 9498639782 |
| **FAX** | 9498639783 |
| ***EMAIL ADDRESS** | dyu@ardentlawgroup.com;aking@ardentlawgroup.com |
| ***AUTHORIZED TO COMMUNICATE VIA EMAIL** | Yes |

## FEE INFORMATION

| | |
|---|---|
| **APPLICATION FILING OPTION** | TEAS RF |
| **NUMBER OF CLASSES** | 1 |
| **FEE PER CLASS** | 275 |
| ***TOTAL FEE DUE** | 275 |

| *TOTAL FEE PAID | 275 |
|---|---|
| **SIGNATURE INFORMATION** | |
| SIGNATURE | /David Yu/ |
| SIGNATORY'S NAME | David Yu |
| SIGNATORY'S POSITION | Attorney of Record, California Bar Member |
| SIGNATORY'S PHONE NUMBER | 9498639782 |
| DATE SIGNED | 09/13/2016 |

Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number.
PTO Form 1478 (Rev 09/2006)
OMB No. 0651-0009 (Exp 02/28/2018)

## Trademark/Service Mark Application, Principal Register

**Serial Number: 87170244**
**Filing Date: 09/13/2016**

## To the Commissioner for Trademarks:

**MARK:** ENVII (Standard Characters, see mark)
The literal element of the mark consists of ENVII.
The mark consists of standard characters, without claim to any particular font, style, size, or color.

The applicant, Envii, Inc., a corporation of California, having an address of
    11362 Glen Cove Dr.
    Garden Grove, California 92843
    United States
    714-273-7682(phone)
    joser123123@gmail.com (not authorized)

requests registration of the trademark/service mark identified above in the United States Patent and Trademark Office on the Principal Register established by the Act of July 5, 1946 (15 U.S.C. Section 1051 et seq.), as amended, for the following:

**For specific filing basis information for each item, you must view the display within the Input Table.**
    International Class 034:  Electronic cigarette boxes; Electronic cigarettes

In International Class 034, the mark was first used by the applicant or the applicant's related company or licensee or predecessor in interest at least as early as 08/01/2016, and first used in commerce at least as early as 08/01/2016, and is now in use in such commerce. The applicant is submitting one(or more) specimen(s) showing the mark as used in commerce on or in connection with any item in the class of listed goods/services, consisting of a(n) Three Specimens are provided: (1) black and yellow box displaying mark with electronic cigarette still within the interior of the box; (2) specimen shows the black anterior view of the box with the interior box pulled out showing again the website, and (3) specimen shows the interior of the box holding the electronic cigarette next to the exterior box with displaying the mark..
Specimen File1
Specimen File2
Specimen File3

The applicant's current Attorney Information:
    David Yu of Ardent Law Group, P.C.     2301 Dupont Dr., Suite 510
    Irvine, California 92612
    United States
    9498639782(phone)
    9498639783(fax)
    dyu@ardentlawgroup.com (authorized)
The attorney docket/reference number is ENVII WORD.
The applicant's current Correspondence Information:
    David Yu
    Ardent Law Group, P.C.
    2301 Dupont Dr., Suite 510
    Irvine, California 92612
    9498639782(phone)
    9498639783(fax)
    dyu@ardentlawgroup.com;aking@ardentlawgroup.com (authorized)
**E-mail Authorization:** I authorize the USPTO to send e-mail correspondence concerning the application to the applicant or applicant's attorney at the e-mail address provided above. I understand that a valid e-mail address must be maintained and that the applicant or the applicant's attorney must file the relevant subsequent application-related submissions via the Trademark Electronic Application System (TEAS). Failure to do so will result in an additional processing fee of $50 per international class of goods/services.

A fee payment in the amount of $275 has been submitted with the application, representing payment for 1 class(es).

**Declaration**

The signatory believes that: if the applicant is filing the application under 15 U.S.C. § 1051(a), the applicant is the owner of the trademark/service mark sought to be registered; the applicant is using the mark in commerce on or in connection with the goods/services in the application; the specimen(s) shows the mark as used on or in connection with the goods/services in the application; and/or if the applicant filed an application under 15 U.S.C. § 1051(b), § 1126(d), and/or § 1126(e), the applicant is entitled to use the mark in commerce; the applicant has a bona fide intention, and is entitled, to use the mark in commerce on or in connection with the goods/services in the application. The signatory believes that to the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive. The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of the application or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

**Declaration Signature**

Signature: /David Yu/   Date: 09/13/2016
Signatory's Name: David Yu
Signatory's Position: Attorney of Record, California Bar Member
RAM Sale Number: 87170244
RAM Accounting Date: 09/14/2016

Serial Number: 87170244
Internet Transmission Date: Tue Sep 13 20:40:32 EDT 2016
TEAS Stamp: USPTO/BAS-XXX.XXX.XXX.XXX-20160913204032
119947-87170244-55027945fc0e0b6c51b70468
34d3fd542c4e26ee5ed45cb43069c9c6a9de4ebc
ae-CC-6213-20160913201930492565

# ENVII







# EXHIBIT F

**Generated on:** This page was generated by TSDR on 2017-10-03 14:01:03 EDT

**Mark:** ENVII

# ENVII

| | | | |
|---|---|---|---|
| **US Serial Number:** | 87170244 | **Application Filing Date:** | Sep. 13, 2016 |
| **Filed as TEAS RF:** | Yes | **Currently TEAS RF:** | Yes |
| **Register:** | Principal | | |
| **Mark Type:** | Trademark | | |

**TM5 Common Status Descriptor:**



LIVE/APPLICATION/Under Examination

The trademark application has been accepted by the Office (has met the minimum filing requirements) and that this application has been assigned to an examiner.

**Status:** A final Office action refusing registration has been sent (issued) because the applicant neither satisfied nor overcame all requirements and/or refusals previously raised. The applicant may respond by filing (1) a request for reconsideration; and/or (2) an appeal to the Trademark Trial and Appeal Board. To view all documents in this file, click on the Trademark Document Retrieval link at the top of this page.

**Status Date:** Jul. 04, 2017

## Mark Information

| | |
|---|---|
| **Mark Literal Elements:** | ENVII |
| **Standard Character Claim:** | Yes. The mark consists of standard characters without claim to any particular font style, size, or color. |
| **Mark Drawing Type:** | 4 - STANDARD CHARACTER MARK |

## Goods and Services

**Note:** The following symbols indicate that the registrant/owner has amended the goods/services:

- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

| | | | |
|---|---|---|---|
| **For:** | Electronic cigarette boxes; Electronic cigarettes | | |
| **International Class(es):** | 034 - Primary Class | **U.S Class(es):** | 002, 008, 009, 017 |
| **Class Status:** | ACTIVE | | |
| **Basis:** | 1(a) | | |
| **First Use:** | Aug. 01, 2016 | **Use in Commerce:** | Aug. 01, 2016 |

## Basis Information (Case Level)

| | | | | | |
|---|---|---|---|---|---|
| **Filed Use:** | Yes | **Currently Use:** | Yes | **Amended Use:** | No |
| **Filed ITU:** | No | **Currently ITU:** | No | **Amended ITU:** | No |
| **Filed 44D:** | No | **Currently 44D:** | No | **Amended 44D:** | No |
| **Filed 44E:** | No | **Currently 44E:** | No | **Amended 44E:** | No |
| **Filed 66A:** | No | **Currently 66A:** | No | | |
| **Filed No Basis:** | No | **Currently No Basis:** | No | | |

## Current Owner(s) Information

**Owner Name:** Envii, Inc.

| | |
|---|---|
| **Owner Address:** | 11362 Glen Cove Dr.<br>Garden Grove, CALIFORNIA UNITED STATES 92843 |
| **Legal Entity Type:** CORPORATION | **State or Country**<br>**Where Organized:** CALIFORNIA |

# Attorney/Correspondence Information

### Attorney of Record

| | |
|---|---|
| **Attorney Name:** David Yu | **Docket Number:** ENVII WORD |
| **Attorney Primary**<br>**Email Address:** dyu@ardentlawgroup.com | **Attorney Email**<br>**Authorized:** Yes |

### Correspondent

| | |
|---|---|
| **Correspondent**<br>**Name/Address:** | DAVID YU<br>ARDENT LAW GROUP, P.C.<br>2301 DUPONT DR., SUITE 510<br>IRVINE, CALIFORNIA UNITED STATES 92612 |
| **Phone:** 9498639782 | **Fax:** 9498639783 |
| **Correspondent e-**<br>**mail:** dyu@ardentlawgroup.com aking@ardentlawgroup<br>.com | **Correspondent e-**<br>**mail Authorized:** Yes |

### Domestic Representative - Not Found

# Prosecution History

| Date | Description | Proceeding<br>Number |
|---|---|---|
| Jul. 04, 2017 | NOTIFICATION OF FINAL REFUSAL EMAILED | |
| Jul. 04, 2017 | FINAL REFUSAL E-MAILED | |
| Jul. 04, 2017 | FINAL REFUSAL WRITTEN | 76419 |
| Jun. 17, 2017 | TEAS/EMAIL CORRESPONDENCE ENTERED | 88889 |
| Jun. 16, 2017 | CORRESPONDENCE RECEIVED IN LAW OFFICE | 88889 |
| Jun. 16, 2017 | TEAS RESPONSE TO OFFICE ACTION RECEIVED | |
| Dec. 16, 2016 | NOTIFICATION OF NON-FINAL ACTION E-MAILED | 6325 |
| Dec. 16, 2016 | NON-FINAL ACTION E-MAILED | 6325 |
| Dec. 16, 2016 | NON-FINAL ACTION WRITTEN | 76419 |
| Dec. 15, 2016 | ASSIGNED TO EXAMINER | 76419 |
| Sep. 20, 2016 | NOTICE OF PSEUDO MARK E-MAILED | |
| Sep. 17, 2016 | NEW APPLICATION OFFICE SUPPLIED DATA ENTERED IN TRAM | |
| Sep. 16, 2016 | NEW APPLICATION ENTERED IN TRAM | |

# TM Staff and Location Information

### TM Staff Information

| | |
|---|---|
| **TM Attorney:** FRENCH, CURTIS W | **Law Office**<br>**Assigned:** LAW OFFICE 115 |

### File Location

| | |
|---|---|
| **Current Location:** TMO LAW OFFICE 115 - EXAMINING<br>ATTORNEY ASSIGNED | **Date in Location:** Jul. 04, 2017 |

| | |
|---|---|
| **From:** | TMDesignCodeComments |
| **Sent:** | Tuesday, September 20, 2016 00:23 AM |
| **To:** | dyu@ardentlawgroup.com |
| **Cc:** | aking@ardentlawgroup.com |
| **Subject:** | Official USPTO Notice of Pseudo Mark: U.S. Trademark SN: 87170244: ENVII: Docket/Reference No. ENVII WORD |

| | |
|---|---|
| **Docket/Reference Number:** | ENVII WORD |

The USPTO may assign pseudo marks, as appropriate, to new applications to assist in searching the USPTO database for conflicting marks.  They have no legal significance and will not appear on the registration certificate.

A PSEUDO MARK may be assigned to marks that include words, numbers, compound words, symbols, or acronyms that can have alternative spellings or meanings.  For example, if the mark comprises the words 'YOU ARE' surrounded by a design of a box, the pseudo mark field in the USPTO database would display the mark as 'YOU ARE SQUARE'.  A mark filed as 'URGR8' would receive a pseudo mark of 'YOU ARE GREAT'.

Response to this notice is not required; however, to suggest additions or changes to the pseudo mark assigned to your mark, please e-mail TMDesignCodeComments@USPTO.GOV.  You **must** reference your application serial number within your request.  The USPTO will review the proposal and update the record, if appropriate.  For questions, please call 1-800-786-9199 to speak to a Customer Service representative.

The USPTO will not send any further response to your e-mail.  Check TESS in approximately two weeks to see if the requested changes have been entered.  Requests deemed unnecessary or inappropriate will not be entered.

To view this notice and other documents for this application on-line, go to http://tdr.uspto.gov/search.action?sn=87170244.  NOTE: This notice will only be available on-line the next business day after receipt of this e-mail.

**Pseudo marks assigned to the referenced serial number are listed below.**

**PSEUDO MARK:**

ENVY

# EXHIBIT G

Generated on: This page was generated by TSDR on 2017-09-18 19:23:24 EDT

Mark: ENVII

# ENVII

| | | | |
|---|---|---|---|
| US Serial Number: | 87170244 | Application Filing Date: | Sep. 13, 2016 |
| Filed as TEAS RF: | Yes | Currently TEAS RF: | Yes |
| Register: | Principal | | |
| Mark Type: | Trademark | | |

Status: A final Office action refusing registration has been sent (issued) because the applicant neither satisfied nor overcame all requirements and/or refusals previously raised. The applicant may respond by filing (1) a request for reconsideration; and/or (2) an appeal to the Trademark Trial and Appeal Board. To view all documents in this file, click on the Trademark Document Retrieval link at the top of this page.

Status Date: Jul. 04, 2017

## Mark Information

| | |
|---|---|
| Mark Literal Elements: | ENVII |
| Standard Character Claim: | Yes. The mark consists of standard characters without claim to any particular font style, size, or color. |
| Mark Drawing Type: | 4 - STANDARD CHARACTER MARK |

## Goods and Services

Note: The following symbols indicate that the registrant/owner has amended the goods/services:

- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

| | | | |
|---|---|---|---|
| For: | Electronic cigarette boxes; Electronic cigarettes | | |
| International Class(es): | 034 - Primary Class | U.S Class(es): | 002, 008, 009, 017 |
| Class Status: | ACTIVE | | |
| Basis: | 1(a) | | |
| First Use: | Aug. 01, 2016 | Use in Commerce: | Aug. 01, 2016 |

## Basis Information (Case Level)

| | | | | | |
|---|---|---|---|---|---|
| Filed Use: | Yes | Currently Use: | Yes | Amended Use: | No |
| Filed ITU: | No | Currently ITU: | No | Amended ITU: | No |
| Filed 44D: | No | Currently 44D: | No | Amended 44D: | No |
| Filed 44E: | No | Currently 44E: | No | Amended 44E: | No |
| Filed 66A: | No | Currently 66A: | No | | |
| Filed No Basis: | No | Currently No Basis: | No | | |

## Current Owner(s) Information

| | | | |
|---|---|---|---|
| Owner Name: | Envii, Inc. | | |
| Owner Address: | 11362 Glen Cove Dr.<br>Garden Grove, CALIFORNIA 92843<br>UNITED STATES | | |
| Legal Entity Type: | CORPORATION | State or Country Where Organized: | CALIFORNIA |

# Attorney/Correspondence Information

| Attorney of Record | | | |
|---|---|---|---|
| **Attorney Name:** | David Yu | **Docket Number:** | ENVII WORD |
| **Attorney Primary Email Address:** | dyu@ardentlawgroup.com | **Attorney Email Authorized:** | Yes |

| Correspondent | | | |
|---|---|---|---|
| **Correspondent Name/Address:** | DAVID YU<br>ARDENT LAW GROUP, P.C.<br>2301 DUPONT DR., SUITE 510<br>IRVINE, CALIFORNIA 92612<br>UNITED STATES | | |
| **Phone:** | 9498639782 | **Fax:** | 9498639783 |
| **Correspondent e-mail:** | dyu@ardentlawgroup.com aking@ardentlawgroup.com | **Correspondent e-mail Authorized:** | Yes |

**Domestic Representative - Not Found**

# Prosecution History

| Date | Description | Proceeding Number |
|---|---|---|
| Jul. 04, 2017 | NOTIFICATION OF FINAL REFUSAL EMAILED | |
| Jul. 04, 2017 | FINAL REFUSAL E-MAILED | |
| Jul. 04, 2017 | FINAL REFUSAL WRITTEN | 76419 |
| Jun. 17, 2017 | TEAS/EMAIL CORRESPONDENCE ENTERED | 88889 |
| Jun. 16, 2017 | CORRESPONDENCE RECEIVED IN LAW OFFICE | 88889 |
| Jun. 16, 2017 | TEAS RESPONSE TO OFFICE ACTION RECEIVED | |
| Dec. 16, 2016 | NOTIFICATION OF NON-FINAL ACTION E-MAILED | 6325 |
| Dec. 16, 2016 | NON-FINAL ACTION E-MAILED | 6325 |
| Dec. 16, 2016 | NON-FINAL ACTION WRITTEN | 76419 |
| Dec. 15, 2016 | ASSIGNED TO EXAMINER | 76419 |
| Sep. 20, 2016 | NOTICE OF PSEUDO MARK E-MAILED | |
| Sep. 17, 2016 | NEW APPLICATION OFFICE SUPPLIED DATA ENTERED IN TRAM | |
| Sep. 16, 2016 | NEW APPLICATION ENTERED IN TRAM | |

# TM Staff and Location Information

| TM Staff Information | | | |
|---|---|---|---|
| **TM Attorney:** | FRENCH, CURTIS W | **Law Office Assigned:** | LAW OFFICE 115 |

| File Location | | | |
|---|---|---|---|
| **Current Location:** | TMO LAW OFFICE 115 - EXAMINING ATTORNEY ASSIGNED | **Date in Location:** | Jul. 04, 2017 |

| To: | Envii, Inc. (dyu@ardentlawgroup.com) |
| --- | --- |
| Subject: | U.S. TRADEMARK APPLICATION NO. 87170244 - ENVII - ENVII WORD |
| Sent: | 12/16/2016 1:21:41 PM |
| Sent As: | ECOM115@USPTO.GOV |
| Attachments: | Attachment - 1 |
| | Attachment - 2 |

**UNITED STATES PATENT AND TRADEMARK OFFICE (USPTO)**
**OFFICE ACTION (OFFICIAL LETTER) ABOUT APPLICANT'S TRADEMARK APPLICATION**

**U.S. APPLICATION SERIAL NO.** 87170244

**MARK:** ENVII

**CORRESPONDENT ADDRESS:**
    DAVID YU
    ARDENT LAW GROUP, P.C.
    2301 DUPONT DR., SUITE 510
    IRVINE, CA 92612

**APPLICANT:** Envii, Inc.

**CORRESPONDENT'S REFERENCE/DOCKET NO :**
    ENVII WORD
**CORRESPONDENT E-MAIL ADDRESS:**
    dyu@ardentlawgroup.com

# *87170244*

**CLICK HERE TO RESPOND TO THIS LETTER:**
http://www.uspto.gov/trademarks/teas/response_forms.jsp

VIEW YOUR APPLICATION FILE

## OFFICE ACTION

## STRICT DEADLINE TO RESPOND TO THIS LETTER

TO AVOID ABANDONMENT OF APPLICANT'S TRADEMARK APPLICATION, THE USPTO MUST RECEIVE APPLICANT'S COMPLETE RESPONSE TO THIS LETTER **WITHIN 6 MONTHS** OF THE ISSUE/MAILING DATE BELOW.

**ISSUE/MAILING DATE: 12/16/2016**

The referenced application has been reviewed by the assigned trademark examining attorney. Applicant must respond timely and completely to the issue(s) below. 15 U.S.C. §1062(b); 37 C.F.R. §§2.62(a), 2.65(a); TMEP §§711, 718.03.

Summary of Issues that Applicant Must Address

- Refusal under Section 2(d) – Likelihood of Confusion

Refusal under Section 2(d) – Likelihood of Confusion
Registration of the applied-for mark is refused because of a likelihood of confusion with the mark in U.S. Registration No. 4717824. Trademark Act Section 2(d), 15 U.S.C. §1052(d); *see* TMEP §§1207.01 *et seq.* See the attached registration.

Trademark Act Section 2(d) bars registration of an applied-for mark that so resembles a registered mark that it is likely a potential consumer would be confused, mistaken, or deceived as to the source of the goods and/or services of the applicant and registrant. *See* 15 U.S.C. §1052(d). A determination of likelihood of confusion under Section 2(d) is made on a case-by case basis and the factors set forth in *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 1361, 177 USPQ 563, 567 (C.C.P.A. 1973) aid in this determination. *Citigroup Inc. v. Capital City Bank Grp., Inc.*, 637 F.3d 1344, 1349, 98 USPQ2d 1253, 1256 (Fed. Cir. 2011) (citing *On-Line Careline, Inc. v. Am. Online, Inc.*, 229 F.3d 1080, 1085, 56 USPQ2d 1471, 1474 (Fed. Cir. 2000)). Not all the *du Pont* factors, however, are necessarily relevant or of equal weight, and any one of the factors may control in a given case, depending upon the evidence of record. *Citigroup Inc. v. Capital City Bank Grp., Inc.*, 637 F.3d at 1355, 98 USPQ2d at 1260; *In re Majestic Distilling Co.*, 315 F.3d 1311, 1315, 65 USPQ2d 1201, 1204 (Fed. Cir. 2003); *see In re E. I. du Pont de Nemours & Co.*, 476 F.2d at 1361-62, 177 USPQ at 567.

In this case, the following factors are the most relevant: similarity of the marks, similarity and nature of the goods and/or services, and similarity of the trade channels of the goods and/or services. *See In re Viterra Inc.*, 671 F.3d 1358, 1361-62, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012); *In re Dakin's Miniatures Inc.*, 59 USPQ2d 1593, 1595-96 (TTAB 1999); TMEP §§1207.01 *et seq.*

Applicant seeks to register the proposed mark ENVII. The cited registration is for the mark ENVY. The marks are essentially phonetic equivalents and thus sound similar. Similarity in sound alone may be sufficient to support a finding that the marks are confusingly similar. *In re White Swan Ltd.*, 8 USPQ2d 1534, 1535 (TTAB 1988); *see In re 1st USA Realty Prof'ls, Inc.*, 84 USPQ2d 1581, 1586 (TTAB 2007); TMEP §1207.01(b)(iv).

The goods and/or services of the parties need not be identical or even competitive to find a likelihood of confusion. *See On-line Careline Inc. v. Am. Online Inc.*, 229 F.3d 1080, 1086, 56 USPQ2d 1471, 1475 (Fed. Cir. 2000); *Recot, Inc. v. Becton*, 214 F.3d 1322, 1329, 54 USPQ2d 1894, 1898 (Fed. Cir. 2000) ("[E]ven if the goods in question are different from, and thus not related to, one another in kind, the same goods can be related in the mind of the consuming public as to the origin of the goods."); TMEP §1207.01(a)(i).

The respective goods and/or services need only be "related in some manner and/or if the circumstances surrounding their marketing [be] such that they could give rise to the mistaken belief that [the goods and/or services] emanate from the same source." *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1369, 101 USPQ2d 1713, 1722 (Fed. Cir. 2012) (quoting *7-Eleven Inc. v. Wechsler*, 83 USPQ2d 1715, 1724 (TTAB 2007)); TMEP §1207.01(a)(i).

Applicant seeks to register its mark for "Electronic cigarette boxes; Electronic cigarettes." Registrant's goods are "electronic hookahs; smokeless cigar vaporizer pipes; and smokeless cigarette vaporizer pipe." These goods are closely related because they are electronic cigarettes.

The overriding concern is not only to prevent buyer confusion as to the source of the goods and/or services, but to protect the registrant from adverse commercial impact due to use of a similar mark by a newcomer. *See In re Shell Oil Co.*, 992 F.2d 1204, 1208, 26 USPQ2d 1687, 1690 (Fed. Cir. 1993). Therefore, any doubt regarding a likelihood of confusion determination is resolved in favor of the registrant. TMEP §1207.01(d)(i); *see Hewlett-Packard Co. v. Packard Press, Inc.*, 281 F.3d 1261, 1265, 62 USPQ2d 1001, 1003 (Fed. Cir. 2002); *In re Hyper Shoppes (Ohio), Inc.*, 837 F.2d 463, 464-65, 6 USPQ2d 1025, 1026 (Fed. Cir. 1988).

Although applicant's mark has been refused registration, applicant may respond to the refusal(s) by submitting evidence and arguments in support of registration.

If applicant has questions regarding this Office action, please telephone or e-mail the assigned trademark examining attorney. All relevant e-mail communications will be placed in the official application record; however, an e-mail communication will not be accepted as a response to this Office action and will not extend the deadline for filing a proper response. *See* 37 C.F.R. §§2.62(c), 2.191; TMEP §§304.01-.02, 709.04-.05. Further, although the trademark examining attorney may provide additional explanation pertaining to the refusal(s) and/or requirement(s) in this Office action, the trademark examining attorney may not provide legal advice or statements about applicant's rights. *See* TMEP §§705.02, 709.06.

**TEAS PLUS OR TEAS REDUCED FEE (TEAS RF) APPLICANTS – TO MAINTAIN LOWER FEE, ADDITIONAL REQUIREMENTS MUST BE MET, INCLUDING SUBMITTING DOCUMENTS ONLINE:** Applicants who filed their application online using the lower-fee TEAS Plus or TEAS RF application form must (1) file certain documents online using TEAS, including responses to Office actions (see TMEP §§819.02(b), 820.02(b) for a complete list of these documents); (2) maintain a valid e-mail correspondence address; and (3) agree to receive correspondence from the USPTO by e-mail throughout the prosecution of the application. *See* 37 C.F.R. §§2.22(b), 2.23(b); TMEP §§819, 820. TEAS Plus or TEAS RF applicants who do not meet these requirements must submit an additional processing fee of $50 per international class of goods and/or services. 37 C.F.R. §§2.6(a)(1)(v), 2.22(c), 2.23(c); TMEP §§819.04, 820.04. However, in certain situations, TEAS Plus or TEAS RF applicants may respond to an Office action by authorizing an examiner's amendment by telephone or e-mail without incurring this additional fee.

/Curtis French/
Trademark Attorney
Law Office 115
571-272-9472

curtis.french@uspto.gov

**TO RESPOND TO THIS LETTER:**  Go to http://www.uspto.gov/trademarks/teas/response_forms.jsp.  Please wait 48-72 hours from the issue/mailing date before using the Trademark Electronic Application System (TEAS), to allow for necessary system updates of the application.  For *technical* assistance with online forms, e-mail TEAS@uspto.gov.  For questions about the Office action itself, please contact the assigned trademark examining attorney.  **E-mail communications will not be accepted as responses to Office actions; therefore, do not respond to this Office action by e-mail.**

**All informal e-mail communications relevant to this application will be placed in the official application record.**

**WHO MUST SIGN THE RESPONSE:**  It must be personally signed by an individual applicant or someone with legal authority to bind an applicant (i.e., a corporate officer, a general partner, all joint applicants).  If an applicant is represented by an attorney, the attorney must sign the response.

**PERIODICALLY CHECK THE STATUS OF THE APPLICATION:**  To ensure that applicant does not miss crucial deadlines or official notices, check the status of the application every three to four months using the Trademark Status and Document Retrieval (TSDR) system at http://tsdr.uspto.gov/.  Please keep a copy of the TSDR status screen.  If the status shows no change for more than six months, contact the Trademark Assistance Center by e-mail at TrademarkAssistanceCenter@uspto.gov or call 1-800-786-9199.  For more information on checking status, see http://www.uspto.gov/trademarks/process/status/.

**TO UPDATE CORRESPONDENCE/E-MAIL ADDRESS:**  Use the TEAS form at http://www.uspto.gov/trademarks/teas/correspondence.jsp.

**Print: Dec 16, 2016**                    **86189080**

**DESIGN MARK**

**Serial Number**
86189080

**Status**
REGISTERED

**Word Mark**
ENVY

**Standard Character Mark**
Yes

**Registration Number**
4717824

**Date Registered**
2015/04/07

**Type of Mark**
TRADEMARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Owner**
VAN BURREN, NICHOLAS INDIVIDUAL UNITED STATES 4457 WEST 110TH CIR
WESTMINSTER COLORADO 80031

**Goods/Services**
Class Status -- ACTIVE.  IC 034.  US  002 008 009 017.  G & S:
electronic hookahs; smokeless cigar vaporizer pipes; and smokeless
cigarette vaporizer pipe.  First Use: 2013/07/08.  First Use In
Commerce: 2013/07/08.

**Filing Date**
2014/02/10

**Examining Attorney**
GUTTADAURO,JULIE

**Attorney of Record**
Aaron M. Cohn

# Envy

| | |
|---|---|
| **To:** | Envii, Inc. (dyu@ardentlawgroup.com) |
| **Subject:** | U.S. TRADEMARK APPLICATION NO. 87170244 - ENVII - ENVII WORD |
| **Sent:** | 12/16/2016 1:21:43 PM |
| **Sent As:** | ECOM115@USPTO.GOV |
| **Attachments:** | |

### UNITED STATES PATENT AND TRADEMARK OFFICE (USPTO)

### IMPORTANT NOTICE REGARDING YOUR
### U.S. TRADEMARK APPLICATION

USPTO OFFICE ACTION (OFFICIAL LETTER) HAS ISSUED
ON **12/16/2016** FOR U.S. APPLICATION SERIAL NO. 87170244

Please follow the instructions below:

**(1)  TO READ THE LETTER:**  Click on this link or go to http://tsdr.uspto.gov, enter the U.S. application serial number, and click on "Documents."

The Office action may not be immediately viewable, to allow for necessary system updates of the application, but will be available within 24 hours of this e-mail notification.

**(2)  TIMELY RESPONSE IS REQUIRED:**  Please carefully review the Office action to determine (1) how to respond, and (2) the applicable response time period.  Your response deadline will be calculated from **12/16/2016** (*or sooner if specified in the Office action*).  For information regarding response time periods, see http://www.uspto.gov/trademarks/process/status/responsetime.jsp.

**Do NOT hit "Reply" to this e-mail notification, or otherwise e-mail your response** because the USPTO does NOT accept e-mails as responses to Office actions.  Instead, the USPTO recommends that you respond online using the Trademark Electronic Application System (TEAS) response form located at http://www.uspto.gov/trademarks/teas/response_forms.jsp.

**(3)  QUESTIONS:**  For questions about the contents of the Office action itself, please contact the assigned trademark examining attorney.  For *technical* assistance in accessing or viewing the Office action in the Trademark Status and Document Retrieval (TSDR) system, please e-mail TSDR@uspto.gov.

### WARNING

**Failure to file the required response by the applicable response deadline will result in the ABANDONMENT of your application.**  For more information regarding abandonment, see http://www.uspto.gov/trademarks/basics/abandon.jsp**.**

**PRIVATE COMPANY SOLICITATIONS REGARDING YOUR APPLICATION:**  Private companies **not** associated with the USPTO are using information provided in trademark applications to mail or e-mail trademark-related solicitations.  These companies often use names that closely resemble the USPTO and their solicitations may look like an official government document.  Many solicitations require that you pay "fees."

Please carefully review all correspondence you receive regarding this application to make sure that you are responding to an official document from the USPTO rather than a private company solicitation.  All official USPTO correspondence will be mailed only from the "United States Patent and Trademark Office" in Alexandria, VA; or sent by e-mail from the domain "@uspto.gov."  For more information on how to handle private company solicitations, see http://www.uspto.gov/trademarks/solicitation_warnings.jsp.

# EXHIBIT H

**Generated on:** This page was generated by TSDR on 2017-09-18 20:03:09 EDT

**Mark:** ENVII

# ENVII

| | | | |
|---|---|---|---|
| **US Serial Number:** | 87170244 | **Application Filing Date:** | Sep. 13, 2016 |
| **Filed as TEAS RF:** | Yes | **Currently TEAS RF:** | Yes |
| **Register:** | Principal | | |
| **Mark Type:** | Trademark | | |

**Status:** A final Office action refusing registration has been sent (issued) because the applicant neither satisfied nor overcame all requirements and/or refusals previously raised. The applicant may respond by filing (1) a request for reconsideration; and/or (2) an appeal to the Trademark Trial and Appeal Board. To view all documents in this file, click on the Trademark Document Retrieval link at the top of this page.

**Status Date:** Jul. 04, 2017

---

## Mark Information

**Mark Literal Elements:** ENVII

**Standard Character Claim:** Yes. The mark consists of standard characters without claim to any particular font style, size, or color.

**Mark Drawing Type:** 4 - STANDARD CHARACTER MARK

---

## Goods and Services

**Note:** The following symbols indicate that the registrant/owner has amended the goods/services:

- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

| | | | |
|---|---|---|---|
| **For:** | Electronic cigarette boxes; Electronic cigarettes | | |
| **International Class(es):** | 034 - Primary Class | **U.S Class(es):** | 002, 008, 009, 017 |
| **Class Status:** | ACTIVE | | |
| **Basis:** | 1(a) | | |
| **First Use:** | Aug. 01, 2016 | **Use in Commerce:** | Aug. 01, 2016 |

---

## Basis Information (Case Level)

| | | | | | |
|---|---|---|---|---|---|
| **Filed Use:** | Yes | **Currently Use:** | Yes | **Amended Use:** | No |
| **Filed ITU:** | No | **Currently ITU:** | No | **Amended ITU:** | No |
| **Filed 44D:** | No | **Currently 44D:** | No | **Amended 44D:** | No |
| **Filed 44E:** | No | **Currently 44E:** | No | **Amended 44E:** | No |
| **Filed 66A:** | No | **Currently 66A:** | No | | |
| **Filed No Basis:** | No | **Currently No Basis:** | No | | |

---

## Current Owner(s) Information

| | |
|---|---|
| **Owner Name:** | Envii, Inc. |
| **Owner Address:** | 11362 Glen Cove Dr. Garden Grove, CALIFORNIA 92843 UNITED STATES |
| **Legal Entity Type:** | CORPORATION |
| **State or Country Where Organized:** | CALIFORNIA |

# Attorney/Correspondence Information

| Attorney of Record | |
|---|---|
| **Attorney Name:** David Yu | **Docket Number:** ENVII WORD |
| **Attorney Primary Email Address:** dyu@ardentlawgroup.com | **Attorney Email Authorized:** Yes |

| Correspondent | |
|---|---|
| **Correspondent Name/Address:** DAVID YU<br>ARDENT LAW GROUP, P.C.<br>2301 DUPONT DR., SUITE 510<br>IRVINE, CALIFORNIA 92612<br>UNITED STATES | |
| **Phone:** 9498639782 | **Fax:** 9498639783 |
| **Correspondent e-mail:** dyu@ardentlawgroup.com aking@ardentlawgroup.com | **Correspondent e-mail Authorized:** Yes |

| Domestic Representative - Not Found |
|---|

# Prosecution History

| Date | Description | Proceeding Number |
|---|---|---|
| Jul. 04, 2017 | NOTIFICATION OF FINAL REFUSAL EMAILED | |
| Jul. 04, 2017 | FINAL REFUSAL E-MAILED | |
| Jul. 04, 2017 | FINAL REFUSAL WRITTEN | 76419 |
| Jun. 17, 2017 | TEAS/EMAIL CORRESPONDENCE ENTERED | 88889 |
| Jun. 16, 2017 | CORRESPONDENCE RECEIVED IN LAW OFFICE | 88889 |
| Jun. 16, 2017 | TEAS RESPONSE TO OFFICE ACTION RECEIVED | |
| Dec. 16, 2016 | NOTIFICATION OF NON-FINAL ACTION E-MAILED | 6325 |
| Dec. 16, 2016 | NON-FINAL ACTION E-MAILED | 6325 |
| Dec. 16, 2016 | NON-FINAL ACTION WRITTEN | 76419 |
| Dec. 15, 2016 | ASSIGNED TO EXAMINER | 76419 |
| Sep. 20, 2016 | NOTICE OF PSEUDO MARK E-MAILED | |
| Sep. 17, 2016 | NEW APPLICATION OFFICE SUPPLIED DATA ENTERED IN TRAM | |
| Sep. 16, 2016 | NEW APPLICATION ENTERED IN TRAM | |

# TM Staff and Location Information

| TM Staff Information | |
|---|---|
| **TM Attorney:** FRENCH, CURTIS W | **Law Office Assigned:** LAW OFFICE 115 |

| File Location | |
|---|---|
| **Current Location:** TMO LAW OFFICE 115 - EXAMINING ATTORNEY ASSIGNED | **Date in Location:** Jul. 04, 2017 |

Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number.
PTO Form 1957 (Rev 10/2011)
OMB No. 0651-0050 (Exp 07/31/2017)

# Response to Office Action

## The table below presents the data as entered.

| Input Field | Entered |
|---|---|
| **SERIAL NUMBER** | 87170244 |
| **LAW OFFICE ASSIGNED** | LAW OFFICE 115 |
| **MARK SECTION** | |
| MARK | https://tmng-al.uspto.gov/resting2/api/img/87170244/large |
| LITERAL ELEMENT | ENVII |
| STANDARD CHARACTERS | YES |
| USPTO-GENERATED IMAGE | YES |
| MARK STATEMENT | The mark consists of standard characters, without claim to any particular font style, size or color. |
| **ARGUMENT(S)** | |

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE Applicant: Envii, Inc. Serial No: 87170244 Mark: ENVII Class: 34 Filed: September13, 2016 RESPONSE TO OFFICE ACTION DATED DECEMBER 16, 2017 REMARKS I. Likelihood of Confusion Refusal Under Section 2(d) The Examining Attorney?s refusal to register Applicant?s mark under Section 2(d) of the Trademark Act is made on the basis that Applicant?s mark, ENVII, when used on or in connection with the identified goods, so resembles the mark ENVY in Registration No. 4717824, as to be likely to cause confusion, to cause mistake or to deceive. A likelihood of confusion may be said to exist only where (1) an applicant?s mark is similar to the cited mark in terms of sight, sound, or commercial impression, and (2) the applicant?s goods are so related to the goods associated with the cited mark, or the activities surrounding their respective marketing efforts are so similar, that confusion as to the source of the goods is likely. See In re E.I. DuPont de Nemours & Co., 476 F.2d 1357, 177 U.S.P.Q. 563 (C.C.P.A. 1973); In re Aug. Storck KG, 218 U.S.P.Q. 823 (T.T.A.B. 1983); In re Int?l Telephone & Telegraph Co., 197 U.S.P.Q. 910 (T.T.A.B 1978). Among the factors to be considered in the determination of likelihood of confusion under Section 2(d), the following are particularly pertinent: 1. the similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression; 2. the similarity or dissimilarity of, and nature of the goods are services described in an application or registration or in connection with which a prior mark is in use: 3. the market interface between the Applicant and Registrants; 4. the conditions under which, and the buyers to whom sales are made, i.e., ?impulse? vs. careful, sophisticated purchasing; 5. the number and nature of similar marks in use; and 6. the extent of potential confusion. No one factor is controlling. Each factor may, from case-to-case, play a dominant role. See In re E.I. DuPont de Nemours & Co., 476 F.2d 1357, 1360-62 (C.C.P.A. 1973). Moreover, there is no mechanical test for determining likelihood of confusion. The question to be determined is not whether the actual goods or services are likely to be confused but, rather, whether there is a likelihood of confusion as to the source of the goods or services because of the marks used in connection therewith. See In re Rexel Inc., 223 U.S.P.Q. 830, 831 (TTAB 1984). Each case must be decided on its own facts. A. Applicant?s Mark and the Cited Mark are Different The Court of Appeals for the Federal Circuit has provided the following guidance with regard to determining and articulating likelihood of confusion: The basic principle in determining confusion between marks is that marks must be compared in their entireties and must be considered in connection with the particular goods and services for which they are used. It follows from that principle that likelihood of confusion cannot be predicated on dissection of mark, that is on only part of a mark. In re National Data Corp., 753 F.2d 1056, 1058 (Fed. Cir. 1985) (citations omitted) (footnote omitted) (emphasis added). Thus, the determination as to the existence of a likelihood of confusion must consist of a consideration of the marks taken as a whole- as they would be encountered by purchasers. See Taj Mahal Enterprises Ltd. v. Trump, 745 F. Supp. 240, 247 (D.N.J. 1900) (?In making such a comparison, the relevant factor is ?the overall impression created by the mark as a whole rather than simply comparing individual features of the marks.??). The test of likelihood of confusion is not a side-by-side comparison. The issue is whether there is a likelihood of confusion as to the source of the goods or services. In the evaluation of similarities between marks, the emphasis must be on the recollection of the average purchaser who normally retains a general rather than specific impression of the trademarks. Sealed Air Corp. v. Scott Paper Co., 190 U.S.P.A. 106, 109 (TTAB 1976). Thus, even where the marks at issue are identical, there shall be no automatic finding of similarity in appearance and sound. See General Mills, Inc. v. Kellogg Co., 824 F.2d 622, 627 (8th Cir. 1987)(?The use of identical, even dominant, words in common does not mean that two marks are [confusingly] similar.?); In re Lamson Oil Co., 6 U.S.P.Q. 2d 104, 1042 n.4 (TTAB 1987). Here the respective marks are dissimilar in their entireties. When the marks at issue are compared in accordance with the aforementioned precedent it becomes clear that the marks are not confusingly similar. First, the appearance of each mark in its entirety is visually different. There is no automatic finding of similarity in appearance. In re Lamson Oil Co., 6 U.S.P.Q. 2d 104, 1042 n.4 (TTAB 1987). Even slight differences in the appearance of two

marks can be enough to negate any likelihood of confusion. For example, TAPATIO and PATIO are not visually similar. ConAgra Inc. v. Saavedra, 4 U.S.P.Q. 2d 1245, 1247 (TTAB 1987). Likewise COUNTRY VOGUE and VOGUE do not look alike. The Conde Nast Publications, Inc. v. Quality, Inc., 507 F.2d 1404, 1407 (CCPA). Similarly, the marks SENSI-RIBBED and RIBBED, both for condoms, are not similar in appearance. In re Schmid Laboratories v. Youngs Drug Products Corp., 482 F. Supp. 14, 17-18 (D.N.J. 1979). Finally, the marks MERCIREX and REX, both for medications, are not similar in appearance. United Drug Co. v. Mercirex Co., 182 F.2d 222, 224 (CCPA 1950). Likewise, just as in the foregoing controlling case, ENVII as compared to ENVY are not visually similar. The visual differences between the marks are both obvious and numerous. An examination of the marks reveals that: 1. Applicants mark is five letters as oppose to Registrant?s four letter mark; and 2. Applicant?s mark ends with ?II,? whereas the cited marks end with the word ?Y?. This is visually striking It is clear that upon a casual or careful glance, there are obvious differences between the Registration and the Applicant?s mark that a reasonable consumer would not be confused between the two marks. Based upon the differences discussed above, the marks in question are not similar in appearance enough to cause a likelihood of confusion. As stated below, most of consumers for electronic cigarettes will likely go online to seek reviews and products before making a purchase. They will be able to see the two different marks: ?ENVII? and ?ENVY?, and know that they are distinct and separate. The visual contrast is clear to the consumer. Thus, the visual difference is enough for consumers to not be confused. B. The Applicant?s Complete Mark Must Be Reviewed In Its Entirety to Determine Likelihood of Confusion In making its rejection as to confusing similarity, the examining attorney points to only a portion of the mark, specifically that both marks in question are phonetically similar and sound similar. However, applicant?s mark is ?ENVII?, as such the mark must be reviewed for likelihood of confusion as a whole and should not be broken into component parts to reach a conclusion of confusing similarity. See In re Hearst Corp., 25 U.S.P.Q. 2d 1238, 1239 (Fed Cir. 1992)(?marks tend to be perceived in their entireties, and all components thereof must be given appropriate weight.?)(?When GIRL is given fair weight, along with VARGA, confusion with VARGAS becomes less likely.). The meaning or connotation of a mark must be determined in relation to the named goods or services. Even marks that are identical in sound and/or appearance may create sufficient different commercial impressions when applied to the respective parties? goods or services so that there is no likelihood of confusion. See e.g., In re Sears, Roebuck and Co., 2 USPQ2d (TTAB 1987) (No likelihood of confusion between CROSS0OVER for bras and CROSSOVER for ladies? sportswear); In re British Bulldog, Ltd, 224 USPQ 629 (TTAB 1377) (BOTTOMS UP for ladies? and children?s underwear held not likely to be confused with BOTTOMS UP for men?s clothing). Registrant?s mark ENVY is commonly used to mean jealous or jealousy. In contrast, Applicant?s mark ?ENVII? is a fanciful word with the ?II? invoking foreign and exotic undertones. As such, Applicant?s mark creates an utterly different commercial impression. Applicant?s Mark ENVII and Registrant?s Mark ENVY Are Not Pronounced the Same The applicant?s mark and the cited registration are not similar in sound. The audible differences between the marks are both obvious and numerous. An examination of the marks reveals that the Registered mark is of two syllables of ?ENVY? as opposed to the Applicant?s mark, which contains three syllables of ?ENVII?. Thus, Applicant?s mark is properly pronounced as EN-VEE-AHY. For instance, radii, a common word used for the plural of radius, is properly pronounced ?ray-dee-ahy?. Denarii, a common Biblical word used for the plural of denarius, is properly pronounced ?dih-nair-ee-ahy?. Genii, the plural for genius, is properly pronounced ?jee-nee- ahy? Attached as Exhibit 1 are pages from dictionary.com showing the proper pronunciation of radii, denarii, and genii. Attached as Exhibit 2 are pages from Merriam-webster.com which further support Applicant?s proposition of the proper pronunciation of radii, denarii, and genii. Attached as Exhibit 3 is a copy of Applicant?s website vapeenvii.com, which shows that Applicant promotes its mark to be pronounced as three syllables (see upper left hand corner of the website.) II. Applicant?s Goods Compared to Registrant?s Goods Registrant?s ?ENVY? mark covers, in relevant part under international class 34 for electronic hookahs; smokeless cigar vaporizer pipes; and smokeless cigarette vaporizer pipe. Applicant seeks to register its mark ?ENVII? under international class 34 for electronic cigarette boxes and electronic cigarettes. Just because both marks are within the same classification of goods does not lead to the conclusion that a likelihood of confusion will result between the two marks. See In re Dayco Products-Eaglemotive Inc., 9 U.S.P.Q. 2d 1910 (TTAB 1988) (no likelihood of confusion found for IMPERIAL for automobiles and structural parts and IMPERIAL for automotive products). III. Applicant?s Goods are Employed by Careful, Sophisticated Purchasers Applicant?s products are for consumer who seek a more mature and sophisticated vaping experience. Applicant?s products for electronic cigarettes or vaporizers generally retail for $50-$100. Attached as Exhibit 4 are various pages from Applicant?s website vapeenvii.com. Registrant?s products are generally for entry level smokers. Registrant?s primary electronic cigarette is the Envy Nirvana Starter/Economy Pack which is currently sold for $19.95. In fact, all products sold by Registrant online can be bought for $30.00 or less except for the Envy Tactical Coil Rebuilding Kit which is not an electronic cigarette. Attached as Exhibit 5 is a list of Registrant?s products and its pricing from Registrant?s website, envycig.com. Here, Applicant?s consumers are persons who are careful and sophisticated about what type of vaporizer they will choose. ENVII offers a wide array of different vaporizers and electronic cigarettes because it understands that smokers can be very particular. It provides at least sixteen different of flavored liquids to be inserted into the devices on its website. It also provides accessories for replacement and customization. Applicant understands that the consumers in their market are particular and all have unique needs to be satisfied. See Exhibit 3 for examples of ENVII?s products. Applicant?s consumers will likely go online to research its products and compare them with other brands, because they want to purchase an item that will provide a particular vaping experience. As such, generally consumers shopping for electronic cigarettes will not confused by the Applicant?s and Registrant?s mark. IV. There is No Evidence of Actual Source Confusion Between Applicant and Registrant Significantly, Applicant?s service has been operational since 2016, and Applicant is unaware of any instance of actual consumer confusion between the source of its own services and the source of Registrant?s former services. In fact, Applicant was unaware of the existence of ENVY until receiving the USPTO Office Action responded to herein. V. In the Unlikely Event of Actual Confusion, Such Confusion Would Be Strictly De Minimus. Should actual confusion occur, the extent of that confusion will be de minimus and easily overcome. In the unlikely event that a consumer of Registrant?s e-cigarettes were to hear Applicant?s mark or see Applicant?s mark out of context, they will seek out Applicant?s website believing it to identify Registrant?s source, that individual would quickly realize that Applicant does not offer low-end smokeless electronic cigarettes and is engaged in a radically different electronic cigarette business than Registrant?s business. Based on the foregoing, there is no likelihood of confusion between Applicant?s mark and the mark contained in the cited registration. Therefore, Applicant respectfully requests that its application proceed to publication in the Official Gazette.

The Examining Attorney is invited to contact the undersigned with any questions concerning this matter. CONCLUSION Applicant respectfully submits that its application is now in condition for publication. The Examining Attorney is invited to contact the undersigned with any questions concerning this matter. Respectfully submitted, Date: June 16, 2017 /s/ David Yu_____ David Yu ARDENT LAW GROUP, P.C. Attorney for Applicant

## EVIDENCE SECTION

| EVIDENCE FILE NAME(S) | |
|---|---|
| ORIGINAL PDF FILE | evi_1089288113-20170616132406467341_._2017-06-16_TM_Resp_to_OA__ENVII_word_.pdf |
| CONVERTED PDF FILE(S) (59 pages) | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0002.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0003.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0004.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0005.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0006.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0007.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0008.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0009.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0010.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0011.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0012.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0013.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0014.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0015.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0016.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0017.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0018.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0019.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0020.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0021.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0022.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0023.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0024.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0025.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0026.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0027.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0028.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0029.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0030.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0031.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0032.JPG |

| | |
|---|---|
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0033.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0034.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0035.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0036.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0037.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0038.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0039.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0040.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0041.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0042.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0043.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0044.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0045.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0046.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0047.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0048.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0049.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0050.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0051.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0052.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0053.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0054.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0055.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0056.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0057.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0058.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0059.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\871\702\87170244\xml5\ROA0060.JPG |
| **DESCRIPTION OF EVIDENCE FILE** | evidence which support response to office action showing that there is no likelihood of confusion between Applicant's mark ENVII and Registrant's mark ENVY. |

## SIGNATURE SECTION

| | |
|---|---|
| **RESPONSE SIGNATURE** | /David Yu/ |
| **SIGNATORY'S NAME** | David Yu |
| **SIGNATORY'S POSITION** | Attorney of record, California bar member |
| **SIGNATORY'S PHONE NUMBER** | 949-863-9782 |
| **DATE SIGNED** | 06/16/2017 |
| **AUTHORIZED SIGNATORY** | YES |

| FILING INFORMATION SECTION | |
|---|---|
| SUBMIT DATE | Fri Jun 16 13:48:09 EDT 2017 |
| TEAS STAMP | USPTO/ROA-XXX.XX.XX.XXX-2<br>0170616134809155101-87170<br>244-5901d87a888cfb7eaf743<br>b5cfa49439c04fb37801b9f64<br>5538785a85ac47c2f34d-N/A-<br>N/A-20170616132406467341 |

Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number.
PTO Form 1957 (Rev 10/2011)
OMB No. 0651-0050 (Exp 07/31/2017)

## Response to Office Action

## To the Commissioner for Trademarks:

Application serial no. **87170244** ENVII(Standard Characters, see https://tmng-al.uspto.gov/resting2/api/img/87170244/large) has been amended as follows:

### ARGUMENT(S)
**In response to the substantive refusal(s), please note the following:**

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE Applicant: Envii, Inc. Serial No: 87170244 Mark: ENVII Class: 34 Filed: September13, 2016 RESPONSE TO OFFICE ACTION DATED DECEMBER 16, 2017 REMARKS I. Likelihood of Confusion Refusal Under Section 2(d) The Examining Attorney?s refusal to register Applicant?s mark under Section 2(d) of the Trademark Act is made on the basis that Applicant?s mark, ENVII, when used on or in connection with the identified goods, so resembles the mark ENVY in Registration No. 4717824, as to be likely to cause confusion, to cause mistake or to deceive. A likelihood of confusion may be said to exist only where (1) an applicant?s mark is similar to the cited mark in terms of sight, sound, or commercial impression, and (2) the applicant?s goods are so related to the goods associated with the cited mark, or the activities surrounding their respective marketing efforts are so similar, that confusion as to the source of the goods is likely. See In re E.I. DuPont de Nemours & Co., 476 F.2d 1357, 177 U.S.P.Q. 563 (C.C.P.A. 1973); In re Aug. Storck KG, 218 U.S.P.Q. 823 (T.T.A.B. 1983); In re Int?l Telephone & Telegraph Co., 197 U.S.P.Q. 910 (T.T.A.B 1978). Among the factors to be considered in the determination of likelihood of confusion under Section 2(d), the following are particularly pertinent: 1. the similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression; 2. the similarity or dissimilarity of, and nature of the goods or services described in an application or registration or in connection with which a prior mark is in use: 3. the market interface between the Applicant and Registrants; 4. the conditions under which, and the buyers to whom sales are made, i.e., ?impulse? vs. careful, sophisticated purchasing; 5. the number and nature of similar marks in use; and 6. the extent of potential confusion. No one factor is controlling. Each factor may, from case-to-case, play a dominant role. See In re E.I. DuPont de Nemours & Co., 476 F.2d 1357, 1360-62 (C.C.P.A. 1973). Moreover, there is no mechanical test for determining likelihood of confusion. The question to be determined is not whether the actual goods or services are likely to be confused but, rather, whether there is a likelihood of confusion as to the source of the goods or services because of the marks used in connection therewith. See In re Rexel Inc., 223 U.S.P.Q. 830, 831 (TTAB 1984). Each case must be decided on its own facts. A. Applicant?s Mark and the Cited Mark are Different The Court of Appeals for the Federal Circuit has provided the following guidance with regard to determining and articulating likelihood of confusion: The basic principle in determining confusion between marks is that marks must be compared in their entireties and must be considered in connection with the particular goods and services for which they are used. It follows from that principle that likelihood of confusion cannot be predicated on dissection of mark, that is on only part of a mark. See General Mills, Inc. v. Kellogg Co., 753 F.2d 1056, 1058 (Fed. Cir. 1985) (citations omitted) (footnote omitted) (emphasis added). Thus, the determination as to the existence of a likelihood of confusion must consist of a consideration of the marks taken as a whole- as they would be encountered by purchasers. See Taj Mahal Enterprises Ltd. v. Trump, 745 F. Supp. 240, 247 (D.N.J. 1900) (?In making such a comparison, the relevant factor is ?the overall impression created by the mark as a whole rather than simply comparing individual features of the marks.??). The test of likelihood of confusion is not a side-by-side comparison. The issue is whether there is a likelihood of confusion as to the source of the goods or services. In the evaluation of similarities between marks, the emphasis must be on the recollection of the average purchaser who normally retains a general rather than specific impression of the trademarks. Sealed Air Corp. v. Scott Paper Co., 190 U.S.P.A. 106, 109 (TTAB 1976). Thus, even where the marks at issue are identical, there shall be no automatic finding of similarity in appearance and sound. See General Mills, Inc. v. Kellogg Co., 824 F.2d 622, 627 (8th Cir. 1987)(?The use of identical, even dominant, words in common does not mean that two marks are [confusingly] similar.?); In re Lamson Oil Co., 6 U.S.P.Q. 2d 104, 1042 n.4 (TTAB 1987). Here the respective marks are dissimilar in their entireties. When the marks at issue are compared in accordance with the aforementioned precedent it becomes clear that the marks are not confusingly similar. First, the appearance of each mark in its entirety is visually different. There is no automatic finding of similarity in appearance. In re Lamson Oil

Co., 6 U.S.P.Q. 2d 104, 1042 n.4 (TTAB 1987). Even slight differences in the appearance of two marks can be enough to negate any likelihood of confusion. For example, TAPATIO and PATIO are not visually similar. ConAgra Inc. v. Saavedra, 4 U.S.P.Q. 2d 1245, 1247 (TTAB 1987). Likewise COUNTRY VOGUE and VOGUE do not look alike. The Conde Nast Publications, Inc. v. Quality, Inc., 507 F.2d 1404, 1407 (CCPA). Similarly, the marks SENSI-RIBBED and RIBBED, both for condoms, are not similar in appearance. In re Schmid Laboratories v. Youngs Drug Products Corp., 482 F. Supp. 14, 17-18 (D.N.J. 1979). Finally, the marks MERCIREX and REX, both for medications, are not similar in appearance. United Drug Co. v. Mercirex Co., 182 F.2d 222, 224 (CCPA 1950). Likewise, just as in the foregoing controlling case, ENVII as compared to ENVY are not visually similar. The visual differences between the marks are both obvious and numerous. An examination of the marks reveals that: 1. Applicants mark is five letters as oppose to Registrant?s four letter mark; and 2. Applicant?s mark ends with ?II,? whereas the cited marks end with the word ?Y?. This is visually striking It is clear that upon a casual or careful glance, there are obvious differences between the Registration and the Applicant?s mark that a reasonable consumer would not be confused between the two marks. Based upon the differences discussed above, the marks in question are not similar in appearance enough to cause a likelihood of confusion. As stated below, most of consumers for electronic cigarettes will likely go online to seek reviews and products before making a purchase. They will be able to see the two different marks: ?ENVII? and ?ENVY?, and know that they are distinct and separate. The visual contrast is clear to the consumer. Thus, the visual difference is enough for consumers to not be confused. B. The Applicant?s Complete Mark Must Be Reviewed In Its Entirety to Determine Likelihood of Confusion In making its rejection as to confusing similarity, the examining attorney points to only a portion of the mark, specifically that both marks in question are phonetically similar and sound similar. However, applicant?s mark is ?ENVII?, as such the mark must be reviewed for likelihood of confusion as a whole and should not be broken into component parts to reach a conclusion of confusing similarity. See In re Hearst Corp., 25 U.S.P.Q. 2d 1238, 1239 (Fed Cir. 1992)(?marks tend to be perceived in their entireties, and all components thereof must be given appropriate weight.?)(?When GIRL is given fair weight, along with VARGA, confusion with VARGAS becomes less likely.). The meaning or connotation of a mark must be determined in relation to the named goods or services. Even marks that are identical in sound and/or appearance may create sufficient different commercial impressions when applied to the respective parties? goods or services so that there is no likelihood of confusion. See e.g., In re Sears, Roebuck and Co., 2 USPQ2d (TTAB 1987) (No likelihood of confusion between CROSS0OVER for bras and CROSSOVER for ladies? sportswear); In re British Bulldog, Ltd, 224 USPQ 629 (TTAB 1377) (BOTTOMS UP for ladies? and children?s underwear held not likely to be confused with BOTTOMS UP for men?s clothing). Registrant?s mark ENVY is commonly used to mean jealous or jealousy. In contrast, Applicant?s mark ?ENVII? is a fanciful word with the ?II? invoking foreign and exotic undertones. As such, Applicant?s mark creates an utterly different commercial impression. Applicant?s Mark ENVII and Registrant?s Mark ENVY Are Not Pronounced the Same The applicant?s mark and the cited registration are not similar in sound. The audible differences between the marks are both obvious and numerous. An examination of the marks reveals that the Registered mark is of two syllables of ?ENVY? as opposed to the Applicant?s mark, which contains three syllables of ?ENVII?. Thus, Applicant?s mark is properly pronounced as EN-VEE-AHY. For instance, radii, a common word used for the plural of radius, is properly pronounced ?ray-dee-ahy?. Denarii, a common Biblical word used for the plural of denarius, is properly pronounced ?dih-nair-ee-ahy?. Genii, the plural for genius, is properly pronounced ?jee-nee- ahy? Attached as Exhibit 1 are pages from dictionary.com showing the proper pronunciation of radii, denarii, and genii. Attached as Exhibit 2 are pages from Merriam-webster.com which further support Applicant?s proposition of the proper pronunciation of radii, denarii, and genii. Attached as Exhibit 3 is a copy of Applicant?s website vapeenvii.com, which shows that Applicant promotes its mark to be pronounced as three syllables (see upper left hand corner of the website.) II. Applicant?s Goods Compared to Registrant?s Goods Registrant?s ?ENVY? mark covers, in relevant part under international class 34 for electronic hookahs; smokeless cigar vaporizer pipes; and smokeless cigarette vaporizer pipe. Applicant seeks to register its mark ?ENVII? under international class 34 for electronic cigarette boxes and electronic cigarettes. Just because both marks are within the same classification of goods does not lead to the conclusion that a likelihood of confusion will result between the two marks. See In re Dayco Products-Eaglemotive Inc., 9 U.S.P.Q. 2d 1910 (TTAB 1988) (no likelihood of confusion found for IMPERIAL for automobiles and structural parts and IMPERIAL for automotive products). III. Applicant?s Goods are Employed by Careful, Sophisticated Purchasers Applicant?s products are for consumer who seek a more mature and sophisticated vaping experience. Applicant?s products for electronic cigarettes or vaporizers generally retail for $50-$100. Attached as Exhibit 4 are various pages from Applicant?s website vapeenvii.com. Registrant?s products are generally for entry level smokers. Registrant?s primary electronic cigarette is the Envy Nirvana Starter/Economy Pack which is currently sold for $19.95. In fact, all products sold by Registrant online can be bought for $30.00 or less except for the Envy Tactical Coil Rebuilding Kit which is not an electronic cigarette. Attached as Exhibit 5 is a list of Registrant?s products and its pricing from Registrant?s website, envycig.com. Here, Applicant?s consumers are persons who are careful and sophisticated about what type of vaporizer they will choose. ENVII offers a wide array of different vaporizers and electronic cigarettes because it understands that smokers can be very particular. It provides at least sixteen different of flavored liquids to be inserted into the devices on its website. It also provides accessories for replacement and customization. Applicant understands that the consumers in their market are particular and all have unique needs to be satisfied. See Exhibit 3 for examples of ENVII?s products. Applicant?s consumers will likely go online to research its products and compare them with other brands, because they want to purchase an item that will provide a particular vaping experience. As such, generally consumers shopping for electronic cigarettes will not confused by the Applicant?s and Registrant?s mark. IV. There is No Evidence of Actual Source Confusion Between Applicant and Registrant Significantly, Applicant?s service has been operational since 2016, and Applicant is unaware of any instance of actual consumer confusion between the source of its own services and the source of Registrant?s former services. In fact, Applicant was unaware of the existence of ENVY until receiving the USPTO Office Action responded to herein. V. In the Unlikely Event of Actual Confusion, Such Confusion Would Be Strictly De Minimus. Should actual confusion occur, the extent of that confusion will be de minimus and easily overcome. In the unlikely event that a consumer of Registrant?s e-cigarettes were to hear Applicant?s mark or see Applicant?s mark out of context, they will seek out Applicant?s website believing it to identify Registrant?s source, that individual would quickly realize that Applicant does not offer low-end smokeless electronic cigarettes and is engaged in a radically different electronic cigarette business than Registrant?s business. Based on the foregoing, there is no likelihood of confusion between Applicant?s mark and the mark contained in the cited registration. Therefore, Applicant respectfully requests that its application proceed to publication in the Official Gazette. The Examining Attorney is invited to contact the undersigned with any

questions concerning this matter. CONCLUSION Applicant respectfully submits that its application is now in condition for publication. The Examining Attorney is invited to contact the undersigned with any questions concerning this matter. Respectfully submitted, Date: June 16, 2017 /s/ David Yu_____ David Yu ARDENT LAW GROUP, P.C. Attorney for Applicant

**EVIDENCE**

Evidence in the nature of evidence which support response to office action showing that there is no likelihood of confusion between Applicant's mark ENVII and Registrant's mark ENVY. has been attached.

**Original PDF file:**

evi_1089288113-20170616132406467341_._2017-06-16_TM_Resp_to_OA__ENVII_word_.pdf

**Converted PDF file(s)** ( 59 pages)

Evidence-1
Evidence-2
Evidence-3
Evidence-4
Evidence-5
Evidence-6
Evidence-7
Evidence-8
Evidence-9
Evidence-10
Evidence-11
Evidence-12
Evidence-13
Evidence-14
Evidence-15
Evidence-16
Evidence-17
Evidence-18
Evidence-19
Evidence-20
Evidence-21
Evidence-22
Evidence-23
Evidence-24
Evidence-25
Evidence-26
Evidence-27
Evidence-28
Evidence-29
Evidence-30
Evidence-31
Evidence-32
Evidence-33
Evidence-34
Evidence-35
Evidence-36
Evidence-37
Evidence-38
Evidence-39
Evidence-40
Evidence-41
Evidence-42
Evidence-43
Evidence-44
Evidence-45
Evidence-46
Evidence-47
Evidence-48
Evidence-49

[Evidence-50](#)
[Evidence-51](#)
[Evidence-52](#)
[Evidence-53](#)
[Evidence-54](#)
[Evidence-55](#)
[Evidence-56](#)
[Evidence-57](#)
[Evidence-58](#)
[Evidence-59](#)

**SIGNATURE(S)**
**Response Signature**
Signature: /David Yu/     Date: 06/16/2017
Signatory's Name: David Yu
Signatory's Position: Attorney of record, California bar member

Signatory's Phone Number: 949-863-9782

The signatory has confirmed that he/she is an attorney who is a member in good standing of the bar of the highest court of a U.S. state, which includes the District of Columbia, Puerto Rico, and other federal territories and possessions; and he/she is currently the owner's/holder's attorney or an associate thereof; and to the best of his/her knowledge, if prior to his/her appointment another U.S. attorney or a Canadian attorney/agent not currently associated with his/her company/firm previously represented the owner/holder in this matter: (1) the owner/holder has filed or is concurrently filing a signed revocation of or substitute power of attorney with the USPTO; (2) the USPTO has granted the request of the prior representative to withdraw; (3) the owner/holder has filed a power of attorney appointing him/her in this matter; or (4) the owner's/holder's appointed U.S. attorney or Canadian attorney/agent has filed a power of attorney appointing him/her as an associate attorney in this matter.

Serial Number: 87170244
Internet Transmission Date: Fri Jun 16 13:48:09 EDT 2017
TEAS Stamp: USPTO/ROA-XXX.XX.XX.XXX-2017061613480915
5101-87170244-5901d87a888cfb7eaf743b5cfa
49439c04fb37801b9f645538785a85ac47c2f34d
-N/A-N/A-20170616132406467341

### IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant: Envii, Inc.

Serial No: 87170244

Mark: ENVII

Class: 34

Filed: September13, 2016

### RESPONSE TO OFFICE ACTION DATED DECEMBER 16, 2017

### REMARKS

#### I. Likelihood of Confusion Refusal Under Section 2(d)

The Examining Attorney's refusal to register Applicant's mark under Section 2(d) of the Trademark Act is made on the basis that Applicant's mark, ENVII, when used on or in connection with the identified goods, so resembles the mark ENVY in Registration No. 4717824, as to be likely to cause confusion, to cause mistake or to deceive. A likelihood of confusion may be said to exist only where (1) an applicant's mark is similar to the cited mark in terms of sight, sound, or commercial impression, and (2) the applicant's goods are so related to the goods associated with the cited mark, or the activities surrounding their respective marketing efforts are so similar, that confusion as to the source of the goods is likely. *See* In re E.I. DuPont de Nemours & Co., 476 F.2d 1357, 177 U.S.P.Q. 563 (C.C.P.A. 1973); In re Aug. Storck KG, 218 U.S.P.Q. 823 (T.T.A.B. 1983); In re Int'l Telephone & Telegraph Co., 197 U.S.P.Q. 910 (T.T.A.B 1978).

Among the factors to be considered in the determination of likelihood of confusion under Section 2(d), the following are particularly pertinent:

1

1.  the similarity or dissimilarity of the marks in their *entireties* as to

    appearance, sound, connotation and commercial impression;

2.  the similarity or dissimilarity of, and nature of the goods or

    services described in an application or registration or in

    connection with which a prior mark is in use:

3.  the market interface between the Applicant and Registrants;

4.  the conditions under which, and the buyers to whom sales are

    made, i.e., "impulse" vs. careful, sophisticated purchasing;

5.  the number and nature of similar marks in use; and

6.  the extent of potential confusion.

No one factor is controlling. Each factor may, from case-to-case, play a dominant

role. *See* In re E.I. DuPont de Nemours & Co., 476 F.2d 1357, 1360-62 (C.C.P.A. 1973).

Moreover, there is no mechanical test for determining likelihood of confusion. The

question to be determined is not whether the actual goods or services are likely to be

confused but, rather, whether there is a likelihood of confusion as to the source of the

goods or services because of the marks used in connection therewith. *See* In re Rexel Inc.,

223 U.S.P.Q. 830, 831 (TTAB 1984). Each case must be decided on its own facts.

**A.     Applicant's Mark and the Cited Mark are Different**

The Court of Appeals for the Federal Circuit has provided the following guidance

with regard to determining and articulating likelihood of confusion:

> The basic principle in determining confusion between marks is that marks must be
> compared in their *entireties* and must be considered in connection with the
> particular goods and services for which they are used. It follows from that
> principle that likelihood of confusion cannot be predicated on dissection of mark,
> that is on only part of a mark.

In re National Data Corp., 753 F.2d 1056, 1058 (Fed. Cir. 1985) (citations omitted) (footnote omitted) (emphasis added).  Thus, the determination as to the existence of a likelihood of confusion must consist of a consideration of the marks taken as a whole- as they would be encountered by purchasers.  *See* Taj Mahal Enterprises Ltd. v. Trump, 745 F. Supp. 240, 247 (D.N.J. 1900) ("In making such a comparison, the relevant factor is 'the overall impression created by the mark as a whole rather than simply comparing individual features of the marks.'").

The test of likelihood of confusion is not a side-by-side comparison.  The issue is whether there is a likelihood of confusion as to the *source* of the goods or services.  In the evaluation of similarities between marks, the emphasis must be on the recollection of the average purchaser who normally retains a general rather than specific impression of the trademarks.  Sealed Air Corp. v. Scott Paper Co., 190 U.S.P.A. 106, 109 (TTAB 1976).  Thus, even where the marks at issue are identical, there shall be no automatic finding of similarity in appearance and sound.  *See* General Mills, Inc. v. Kellogg Co., 824 F.2d 622, 627 (8th Cir. 1987)("The use of identical, even dominant, words in common does not mean that two marks are [confusingly] similar."); In re Lamson Oil Co., 6 U.S.P.Q. 2d 104, 1042 n.4 (TTAB 1987).

Here the respective marks are dissimilar in their entireties.  When the marks at issue are compared in accordance with the aforementioned precedent it becomes clear that the marks are not confusingly similar.

First, the appearance of each mark in its entirety is visually different.  There is no automatic finding of similarity in appearance. In re Lamson Oil Co., 6 U.S.P.Q. 2d 104, 1042 n.4 (TTAB 1987). Even slight differences in the appearance of two marks can be

3

enough to negate any likelihood of confusion.  For example, **TAPATIO** and **PATIO** are not visually similar.  ConAgra Inc. v. Saavedra, 4 U.S.P.Q. 2d 1245, 1247 (TTAB 1987). Likewise **COUNTRY VOGUE** and **VOGUE** do not look alike. The Conde Nast Publications, Inc. v. Quality, Inc., 507 F.2d 1404, 1407 (CCPA).  Similarly, the marks **SENSI-RIBBED** and **RIBBED**, both for condoms, are not similar in appearance.  In re Schmid Laboratories v. Youngs Drug Products Corp., 482 F. Supp. 14, 17-18 (D.N.J. 1979).  Finally, the marks **MERCIREX** and **REX**, both for medications, are not similar in appearance.  United Drug Co. v. Mercirex Co., 182 F.2d 222, 224 (CCPA 1950).

Likewise, just as in the foregoing controlling case, ENVII as compared to ENVY are not visually similar.  The visual differences between the marks are both obvious and numerous.  An examination of the marks reveals that:

1.  Applicants mark is five letters as oppose to Registrant's four letter mark; and

2.  Applicant's mark ends with "II," whereas the cited marks end with the word "Y".  This is visually striking

It is clear that upon a casual or careful glance, there are obvious differences between the Registration and the Applicant's mark that a reasonable consumer would not be confused between the two marks.  Based upon the differences discussed above, the marks in question are not similar in appearance enough to cause a likelihood of confusion.

As stated below, most of consumers for electronic cigarettes will likely go online to seek reviews and products before making a purchase.  They will be able to see the two different marks: "ENVII" and "ENVY", and know that they are distinct and separate.  The visual contrast is clear to the consumer.  Thus, the visual difference is enough for consumers to not be confused.

4

**B.    The Applicant's Complete Mark Must Be Reviewed In Its Entirety to Determine Likelihood of Confusion**

In making its rejection as to confusing similarity, the examining attorney points to only a portion of the mark, specifically that both marks in question are phonetically similar and sound similar.  However, applicant's mark is "ENVII", as such the mark must be reviewed for likelihood of confusion as a whole and should not be broken into component parts to reach a conclusion of confusing similarity. *See* In re Hearst Corp., 25 U.S.P.Q. 2d 1238, 1239 (Fed Cir. 1992)("marks tend to be perceived in their entireties, and all components thereof must be given appropriate weight.")("When GIRL is given fair weight, along with VARGA, confusion with VARGAS becomes less likely.).

The meaning or connotation of a mark must be determined in relation to the named goods or services.  Even marks that are identical in sound and/or appearance may create sufficient different commercial impressions when applied to the respective parties' goods or services so that there is no likelihood of confusion.  See e.g., In re Sears, Roebuck and Co., 2 USPQ2d (TTAB 1987) (No likelihood of confusion between CROSS0OVER for bras and CROSSOVER for ladies' sportswear); In re British Bulldog, Ltd, 224 USPQ 629 (TTAB 1377) (BOTTOMS UP for ladies' and children's underwear held not likely to be confused with BOTTOMS UP for men's clothing).

Registrant's mark ENVY is commonly used to mean jealous or jealousy.  In contrast, Applicant's mark "ENVII" is a fanciful word with the "II" invoking foreign and exotic undertones.  As such, Applicant's mark creates an utterly different commercial impression.

**Applicant's Mark ENVII and Registrant's Mark ENVY Are Not Pronounced the
Same**

The applicant's mark and the cited registration are not similar in sound.  The
audible differences between the marks are both obvious and numerous.  An examination
of the marks reveals that the Registered mark is of two syllables of "ENVY" as opposed to
the Applicant's mark, which contains three syllables of "ENVII".  Thus, Applicant's mark
is properly pronounced as EN-VEE-AHY.  For instance, radii, a common word used for
the plural of radius, is properly pronounced "ray-dee-ahy".  Denarii, a common Biblical
word used for the plural of denarius, is properly pronounced "dih-nair-ee-ahy".  Genii, the
plural for genius, is properly pronounced "jee-nee-ahy"  Attached as **Exhibit 1** are pages
from dictionary.com showing the proper pronunciation of radii, denarii, and genii.
Attached as **Exhibit 2** are pages from Merriam-webster.com which further support
Applicant's proposition of the proper pronunciation of radii, denarii, and genii.  Attached
as **Exhibit 3** is a copy of Applicant's website vapeenvii.com, which shows that Applicant
promotes its mark to be pronounced as three syllables (see upper left hand corner of the
website.)


II.    **Applicant's Goods Compared to Registrant's Goods**

Registrant's "ENVY" mark covers, in relevant part under international class 34 for
electronic hookahs; smokeless cigar vaporizer pipes; and smokeless cigarette vaporizer
pipe.  Applicant seeks to register its mark "ENVII" under international class 34 for
electronic cigarette boxes and electronic cigarettes.  Just because both marks are within the
same classification of goods does not lead to the conclusion that a likelihood of confusion

6

will result between the two marks. *See* <u>In re Dayco Products-Eaglemotive Inc.</u>, 9 U.S.P.Q. 2d 1910 (TTAB 1988)(no likelihood of confusion found for IMPERIAL for automobiles and structural parts and IMPERIAL for automotive products).

III.    <u>**Applicant's Goods are Employed by Careful, Sophisticated Purchasers**</u>

Applicant's products are for consumer who seek a more mature and sophisticated vaping experience. Applicant's products for electronic cigarettes or vaporizers generally retail for $50-$100. Attached as **Exhibit 4** are various pages from Applicant's website vapeenvii.com. Registrant's products are generally for entry level smokers. Registrant's primary electronic cigarette is the Envy Nirvana Starter/Economy Pack which is currently sold for $19.95. In fact, all products sold by Registrant online can be bought for $30.00 or less except for the Envy Tactical Coil Rebuilding Kit which is not an electronic cigarette. Attached as **Exhibit 5** is a list of Registrant's products and its pricing from Registrant's website, envycig.com.

Here, Applicant's consumers are persons who are careful and sophisticated about what type of vaporizer they will choose. ENVII offers a wide array of different vaporizers and electronic cigarettes because it understands that smokers can be very particular. It provides at least sixteen different of flavored liquids to be inserted into the devices on its website. It also provides accessories for replacement and customization. Applicant understands that the consumers in their market are particular and all have unique needs to be satisfied. See Exhibit 3 for examples of ENVII's products. Applicant's consumers will likely go online to research its products and compare them with other brands, because they want to purchase an item that will provide a particular vaping experience. As such,

7

generally consumers shopping for electronic cigarettes will not confused by the Applicant's and Registrant's mark.

## IV.   There is No Evidence of Actual Source Confusion Between Applicant and Registrant

Significantly, Applicant's service has been operational since 2016, and Applicant is unaware of any instance of actual consumer confusion between the source of its own services and the source of Registrant's former services. In fact, Applicant was unaware of the existence of ENVY until receiving the USPTO Office Action responded to herein.

## V.   In the Unlikely Event of Actual Confusion, Such Confusion Would Be Strictly De Minimus.

Should actual confusion occur, the extent of that confusion will be de minimus and easily overcome. In the unlikely event that a consumer of Registrant's e-cigarettes were to hear Applicant's mark or see Applicant's mark out of context, they will seek out Applicant's website believing it to identify Registrant's source, that individual would quickly realize that Applicant does not offer low-end smokeless electronic cigarettes and is engaged in a radically different electronic cigarette business than Registrant's business.

Based on the foregoing, there is no likelihood of confusion between Applicant's mark and the mark contained in the cited registration. Therefore, Applicant respectfully requests that its application proceed to publication in the *Official Gazette*. The Examining Attorney is invited to contact the undersigned with any questions concerning this matter.

8

## CONCLUSION

Applicant respectfully submits that its application is now in condition for publication. The Examining Attorney is invited to contact the undersigned with any questions concerning this matter.

Respectfully submitted,

Date: June 16, 2017

/s/ David Yu

David Yu

ARDENT LAW GROUP, P.C.

Attorney for Applicant

9

# EXHIBIT 1

≡    *Dictionary.com (http://www.dictionary.com/)*        *Thesaurus.com (http://www.thesaurus.com/)*

             (http://www.dictionary.com/)

heday/)            definitions   ∨   radii                                 🔍

[OAKLEY PRIZM]                                    DISCOVER MORE >

# radii

[**rey**-dee-ahy]

Word Origin          See more synonyms on Thesaurus.com (http://www.thesaurus.com/browse/radii)

### noun

1. a plural of radius (http://www.dictionary.com/browse/radius).

# radius

[**rey**-dee-*uh* s]

noun, plural **radii**    [**rey**-dee-ahy] (Show IPA), **radiuses.**

1. a straight line extending from the center of a circle or sphere to the circumference or surface:
   *The radius of a circle is half the diameter.*

2. the length of such a line.

3. any radial (http://www.dictionary.com/browse/radial) or radiating part.

4. a circular area having an extent determined by the length of the radius from a given or specified central point:
   *every house within a radius of 50 miles.*

5. a field or range of operation or influence.

6. extent of possible operation, travel, etc., as under a single supply of fuel:
   *the flying radius of an airplane.*

7. *Anatomy.* the bone of the forearm on the thumb side.
   Compare ulna (http://www.dictionary.com/browse/ulna) (def 1).

### Origin of radius

1590-1600

1590-1600; < Latin: staff, rod, spoke, beam, orig., ray (http://www.dictionary.com/browse/ray)¹

### Can be confused

(http://www.dictionary.com/slideshows/
**Famous Last Wo**

circumference (http://www.dictionary.com/browse/circumference), diameter (http://www.dictionary.com/browse/diameter), **radius,** tangent
(http://www.dictionary.com/browse/tangent).

Dictionary.com Unabridged
Based on the Random House Dictionary, © Random House, Inc. 2017.
Cite This Source

### Examples from the Web for radii

Historical Examples

http://www.dictionary.com/browse/radii?s=t                                                    1/3

6/13/2017                                 Denarii | Define Denarii at Dictionary.com



≡   Dictionary.com (http://www.dictionary.com/)     Thesaurus.com (http://www.thesaurus.com/)

(http://www.dictionary.com/)

heday/)              definitions  ∨  denarii                    🔍

FEATURE                         $126
                                Vans Vault x Our
                                Legacy Pullover
                                Hoodie · Black          Shop Now

                     Free US Shipping On Orders over $150.00

# denarius

[dih-**nair**-ee-*uh* s]

Word Origin

noun, plural **denarii**    [dih-**nair**-ee-ahy] (Show IPA)

1.  a silver coin and monetary unit of ancient Rome, first issued in the latter part of the 3rd century b.c., that fluctuated in value and sometimes appeared as a bronze coin.

2.  a gold coin of ancient Rome equal to 25 silver denarii; aureus.

Explore Dictionary.com
(http://blog.dictionary.com)

12 Insults We Should    The Saddest Words in    Avoid these words.    What's the word for
Bring Back                English              Seriously.            how it smells after it
(http://www.dictionary.   (http://www.dictionary.   (http://www.dictionary.   rains? (http://www.dictionary.com/slideshows/urnwords?
Insults-We-              words?                param=DcomSERP) param=DcomSERP) (http://www.dictionary.com/slideshows/10-
Should-Bring-                                                       weather-words-
Back?                                                               you-need-to-
param=DcomSERP)                                                     know?
                                                                    param=DcomSERP)

Origin of denarius

                                        Latin (http://www.dictionary.com/browse/latin)

(http://www.dictionary.com/slideshows/famous
                                                                        **Famous Last Words**

< Latin *dēnārius*, orig. adj.: containing ten (asses). See denary (http://www.dictionary.com/browse/denary)

Dictionary.com Unabridged
Based on the Random House Dictionary, © Random House, Inc. 2017.
Cite This Source

Examples from the Web for denarii

6/13/2017                                                    Genii | Define Genii at Dictionary.com

☰   *Dictionary.com (http://www.dictionary.com/)*        *Thesaurus.com (http://www.thesaurus.com/)*

(http://www.dictionary.com/)

heday/)                          definitions   ∨   genii                    🔍

# genii

### [jee-nee-ahy]

Examples     Word Origin
             See more synonyms on Thesaurus.com (http://www.thesaurus.com/browse/genii)

#### noun

1. a plural of genius (http://www.dictionary.com/browse/genius).

Explore Dictionary.com
(http://blog.dictionary.com)

12 Insults We Should   The Saddest Words in   Avoid these words.   What's the word for
Bring Back             English                Seriously.           how it smells after it
(http://www.dictionary.com/slideshows/    (http://www.dictionary.com/slideshows/umwords?
Insults-We-            words?              param=DcomSERP (http://www.dictionary.com/slideshows/10-
Should-Bring-          param=DcomSERP)                          weather-words-
Back?                                                           you-need-to-
param=DcomSERP)                                                 know?
                                                                param=DcomSERP)

# genius

### [jeen-*yuh* s]

#### noun, plural **geniuses** for 2, 3, 8, **genii**   [jee-nee-ahy] (Show IPA), for 6, 7, 9, 10.

1. an exceptional natural capacity of intellect, especially as shown in creative and original work in science, art, music, etc.:
   *the genius of Mozart.*
   Synonyms: intelligence (http://www.thesaurus.com/browse/intelligence), ingenuity (http://www.thesaurus.com/browse/ingenuity), wit
   (http://www.thesaurus.com/browse/wit); brains (http://www.thesaurus.com/browse/brains).

2. a person having such capacity.

3. a person having an extraordinarily high intelligence rating on a psychological test, as an IQ above 140.
   Synonyms: mental giant (http://www.thesaurus.com/browse/mental%20giant), master (http://www.thesaurus.com/browse/master), expert
   (http://www.thesaurus.com/browse/expert); whiz (http://www.thesaurus.com/browse/whiz), brain (http://www.thesaurus.com/browse/brain),
   brainiac (http://www.thesaurus.com/browse/brainiac).
   Antonyms: idiot (http://www.thesaurus.com/browse/idiot), imbecile (http://www.thesaurus.com/browse/imbecile), half-wit
   (http://www.thesaurus.com/browse/half-wit), dope (http://www.thesaurus.com/browse/dope), moron
   (http://www.thesaurus.com/browse/moron); fool (http://www.thesaurus.com/browse/fool), simpleton
   (http://www.thesaurus.com/browse/simpleton), dunce (http://www.thesaurus.com/browse/dunce), dullard
   (http://www.thesaurus.com/browse/dullard), dolt (http://www.thesaurus.com/browse/dolt); numskull
   (http://www.thesaurus.com/browse/numskull), blockhead (http://www.thesaurus.com/browse/blockhead), nitwit
   (http://www.thesaurus.com/browse/nitwit), ninny (http://www.thesaurus.com/browse/ninny).

(http://www.dictionary.com/slideshows/fa
Famous Last Wor

Heartbreak (http://www.dictionary.com/slideshows/heartbreak-quotes?src=dcom-serp-tab)

com-serp-tab)

# EXHIBIT 2



Merriam-Webster   SINCE 1828   MENU ≡

OUR BEST
UNLIMITED DEALS EVER                    Lear

# radius ◀))

*noun*  |  ra·di·us  |  \ˈrā-dē-əs\

Popularity: Bottom 50% of words

**Examples:** RADIUS in a Sentence ⌄

     

## Definition of RADIUS

*plural* **radii** ◀)) \-dē-ˌī\ *also* **radiuses**

1   : a line segment extending from the center of a circle or sphere to the circumference or bounding surface

2   **a** : the bone on the thumb side of the human forearm; *also* : a corresponding part of vertebrates above fishes
    **b** : the third and usually largest vein of an insect's wing

3   **a** : the length of a radius • a truck with a short turning *radius*
    **b** : the circular area defined by a stated radius
    **c** : a bounded or circumscribed area

4   : a radial part

5   : the distance from a center line or point to an axis of rotation

See *radius* defined for English-language learners

See *radius* defined for kids





# denarius

*noun* | de·nar·i·us | \di-ˈner-ē-əs\

Popularity: Bottom 30% of words

     

## Definition of DENARIUS

*plural* **denarii** \-ē-ˌī, -ē-ˌē\

1    : a small silver coin of ancient Rome

2    : a gold coin of the Roman Empire equivalent to 25 denarii

## Indulge Your Inner Word Nerd

  



# genie ◀ɴ

*noun*  |  ge·nie  |  \ˈjē-nē\

Popularity: Bottom 40% of words

**Examples:** GENIE in a Sentence ⌄

     

## Definition of GENIE

*plural* **genies** *also* <u>**genii**</u> ◀ɴ \ˈjē-nē(-ˌī)\

1    :  JINNI 1

2    :  a magic spirit believed to take human form and serve the person who calls it

See *genie* defined for English-language learners

See *genie* defined for kids

# EXHIBIT 3

6/14/2017                                    Envii



FEATURED



"Limited Edition" FITT Starter Kit
$74.97

FITT Starter Kit
$54.99

Loch Ness
$87.97

Terra RTA
$49.97

MORE PRODUCTS

Please leave a message and we will get
back to you very shortly!

6/14/2017                                                    Envii



| Artisan RTA | Heretic | Kilted RDA | Yeti RDA |
| $45.97 | from $74.97 | from $57.97 | $41.97 |

# EXHIBIT 4

Navigate to...

SHOP                                    VIEW AS

Home / Shop                    Sort by popularity ▼



26G SPIDER SILK TITANIUM VAPE WIRE – SURGICAL GRADE 1 – TI
WIRE (100FT)
$14.95 $9.95



Back to top



24G SPIDER SILK TITANIUM VAPE WIRE – SURGICAL GRADE 1 – TI
WIRE (100FT)
$14.95 $9.95



### ENVY EGO ELITE REFILL
$9.95 $4.95



Back to top

NIRVANA REFILL 3 PACK – BUY ONE GET ONE FREE
$9.95 $2.95

Back to top



NIRVANA STARTER KIT CLOSEOUT
$19.95

Back to top

CLEAROMIZERS
$2.95 – $9.95



Back to top



SUMMER BLEND DISPOSABLES LOT OF 10
$3.95



Back to top



ENVY KNIGHT REFILLS BUY ONE GET ONE SPECIAL
$9.95 $4.95



ENVY EGO BATTERY
$9.95

Back to top



ENVY EGO ELITE
$29.95



## NIRVANA PCC KIT CLOSEOUT
$50.00 $19.95



EGO ELITE USB CHARGER
$1.95

Back to top

6/13/2017          Products Archive - Envy®-Electronic-Cigarettes-Envy-E-liquid™-Envy-Premium-E-liquid™-Envy-Vapes™-Envy®-Vapors



NIRVANA
$25.00

Back to top

6/13/2017                    Products Archive - Envy®-Electronic-Cigarettes-Envy-E-liquid™-Envy-Premium-E-liquid™-Envy-Vapes™-Envy®-Vapors



ENVY GDC
$9.95



Back to top



TRICKSTER VAPE PEN – CLEARANCE
$99.95 $19.95

1    2    3    ›    »

Warning

Back to top



| 0 ITEMS | $0 EMPTY CART |

Navigate to...

## SHOP

VIEW AS

Home / Shop / Page 2

Sort by popularity ▾



### ENVY EVOD TANK
$6.95 $2.95

Back to top



ENVY COIL REBUILDING KIT
$30.00

Back to top





ENVY CUSTOM E-LIQUID



ENVY WALL CHARGER
$4.95



TRICKSTER STASH BALL
$0.95

Back to top



ENVY CAR CHARGER
$4.95



Back to top



ENVY DISPOSABLE VAPORIZER
$19.95 $9.95

Back to top



ENVY VAPES THICK OIL CLEAROMIZER
$9.95

Back to top



ENVY CARRYING CASE
$6.95



Back to top



TRICKSTER SILICONE KEY FOB

$19.95 $9.95

Back to top



FAIRYTALE-LIQUID™
$19.95

Back to top

ENVY POCKET REBUILDING KIT
$16.99

Back to top



ENVY TACTICAL COIL REBUILDING KIT
$86.00

ENVY ELECTRONIC CIGARETTE

Back to top



TRICKSTER CAR DECAL
$2.95

‹     1     2     3     ›

Back to top

Case 8:18-cv-00190-JVS-KES   Document 1   Filed 02/02/18   Page 119 of 165   Page ID #:119

6/13/2017          Products Archive - Page 3 of 3 - Envy®-Electronic-Cigarettes-Envy-E-liquid™-Envy-Premium-E-liquid™-Envy-Vapes™-Envy®-Vapors



**0** ITEMS    $**0** EMPTY CART

Navigate to...

## SHOP                                VIEW AS

Home / Shop / Page 3

Sort by popularity ▼



TRICKSTER ECLIPSE VAPORIZER – CLEARANCE
$99.95 $19.95

# EXHIBIT 5

Devices - Envii

# DEVICES

———

Home   Devices   Page 1 of 1

**FILTER BY:**   All Devices

**SORT BY:**   Featured



*Limited Edition* FITT Starter
Kit
**$74.97**



FITT Starter Kit
**$54.99**



Heretic
*from $74.97*



Loch Ness
**$87.97**

6/13/2017                                              Atomizers - Envii

# ATOMIZERS

Home   Atomizers   Page 1 of 1

**FILTER BY:**   All Atomizers

**SORT BY:**   Featured



Artisan RTA
**$45.97**



Kilted RDA
*from $57.97*



Terra RTA
**$49.97**



Terra RTA Coil Pack
**$12.97**



Yeti RDA
**$41.97**

FOLLOW

6/13/2017                                      E-Liquid - Envii

# E-LIQUID

———

Home   E-Liquid   Page 1 of 1

**FILTER BY:**   All E-Liquid

**SORT BY:**   Featured



FITT Starter Kit
**$54.99**



Ez Duz It On Ice (2 pack) -
Ruthess
**$13.99**



WTF (2 pack) - O.M.G.
**$13.99**



WTF [Ice] (2 pack) - O.M.G.
**$13.99**



Original Blend (2 pack) -
Brewell
**$13.99**



The Milk (2 pack) - Teleos
**$13.99**



Cannoli Be One (2 pack) -
Cassadaga

6/13/2017

Screwbacco (2 pack) - The
Steam Factory
**$13.99**

E-Liquid - Envii

**$13.99**



Kiberry Yogurt (2 pack) - Kilo
**$13.99**



Pistachio RY4 (2 pack) -
Charlie Noble
**$13.99**



Frozen Tundra (2 pack) - E-
Liq Cube
**$13.99**



D'Nish (2 pack) - D'nish
Liquids
**$13.99**



Krankberry Refill (2 pack) -
Fuzion Vapor
**$13.99**



VCT (2 pack) - Ripe Vapes
**$13.99**



Still Sippin' (2 pack) - Flawless
**$13.99**



Hard Apple Mint (2 pack) -
Brewell
**$13.99**



https://vapeenvii.com/collections/e-liquid

2/3

6/13/2017

E-Liquid - Envii

Game Over (2 pack) -
Flawless
**$13.99**



\*Limited Edition\* FITT Starter
Kit
**$74.97**

# ACCESSORIES

Home   Accessories   Page 1 of 1

**FILTER BY:**   All Accessories

**SORT BY:**   Featured



Data/Charging Cable for Loch
Ness
**$4.97**



Heretic Replacement Spring
**$2.97**



Loch Ness Firmware Update
**Free**



Replacement 510 for Loch
Ness
**$4.97**



Replacement FITT Door
**$9.97**



Replacement FITT Drip Tip
**$4.97**

6/13/2017 Accessories - Envii



Terra RTA Coil Pack
**$12.97**

# EXHIBIT I

**Generated on:** This page was generated by TSDR on 2017-09-18 19:22:55 EDT

**Mark:** ENVII

# ENVII

**US Serial Number:** 87170244

**Application Filing Date:** Sep. 13, 2016

**Filed as TEAS RF:** Yes

**Currently TEAS RF:** Yes

**Register:** Principal

**Mark Type:** Trademark

**Status:** A final Office action refusing registration has been sent (issued) because the applicant neither satisfied nor overcame all requirements and/or refusals previously raised. The applicant may respond by filing (1) a request for reconsideration; and/or (2) an appeal to the Trademark Trial and Appeal Board. To view all documents in this file, click on the Trademark Document Retrieval link at the top of this page.

**Status Date:** Jul. 04, 2017

## Mark Information

**Mark Literal Elements:** ENVII

**Standard Character Claim:** Yes. The mark consists of standard characters without claim to any particular font style, size, or color.

**Mark Drawing Type:** 4 - STANDARD CHARACTER MARK

## Goods and Services

**Note:** The following symbols indicate that the registrant/owner has amended the goods/services:

- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

**For:** Electronic cigarette boxes; Electronic cigarettes

**International Class(es):** 034 - Primary Class

**U.S Class(es):** 002, 008, 009, 017

**Class Status:** ACTIVE

**Basis:** 1(a)

**First Use:** Aug. 01, 2016

**Use in Commerce:** Aug. 01, 2016

## Basis Information (Case Level)

| | | | | | |
|---|---|---|---|---|---|
| **Filed Use:** Yes | | **Currently Use:** Yes | | **Amended Use:** No | |
| **Filed ITU:** No | | **Currently ITU:** No | | **Amended ITU:** No | |
| **Filed 44D:** No | | **Currently 44D:** No | | **Amended 44D:** No | |
| **Filed 44E:** No | | **Currently 44E:** No | | **Amended 44E:** No | |
| **Filed 66A:** No | | **Currently 66A:** No | | | |
| **Filed No Basis:** No | | **Currently No Basis:** No | | | |

## Current Owner(s) Information

**Owner Name:** Envii, Inc.

**Owner Address:** 11362 Glen Cove Dr.
Garden Grove, CALIFORNIA 92843
UNITED STATES

**Legal Entity Type:** CORPORATION

**State or Country Where Organized:** CALIFORNIA

# Attorney/Correspondence Information

**Attorney of Record**

| | | | |
|---|---|---|---|
| **Attorney Name:** | David Yu | **Docket Number:** | ENVII WORD |
| **Attorney Primary Email Address:** | dyu@ardentlawgroup.com | **Attorney Email Authorized:** | Yes |

**Correspondent**

| | | | |
|---|---|---|---|
| **Correspondent Name/Address:** | DAVID YU<br>ARDENT LAW GROUP, P.C.<br>2301 DUPONT DR., SUITE 510<br>IRVINE, CALIFORNIA 92612<br>UNITED STATES | | |
| **Phone:** | 9498639782 | **Fax:** | 9498639783 |
| **Correspondent e-mail:** | dyu@ardentlawgroup.com aking@ardentlawgroup.com | **Correspondent e-mail Authorized:** | Yes |

**Domestic Representative - Not Found**

# Prosecution History

| Date | Description | Proceeding Number |
|---|---|---|
| Jul. 04, 2017 | NOTIFICATION OF FINAL REFUSAL EMAILED | |
| Jul. 04, 2017 | FINAL REFUSAL E-MAILED | |
| Jul. 04, 2017 | FINAL REFUSAL WRITTEN | 76419 |
| Jun. 17, 2017 | TEAS/EMAIL CORRESPONDENCE ENTERED | 88889 |
| Jun. 16, 2017 | CORRESPONDENCE RECEIVED IN LAW OFFICE | 88889 |
| Jun. 16, 2017 | TEAS RESPONSE TO OFFICE ACTION RECEIVED | |
| Dec. 16, 2016 | NOTIFICATION OF NON-FINAL ACTION E-MAILED | 6325 |
| Dec. 16, 2016 | NON-FINAL ACTION E-MAILED | 6325 |
| Dec. 16, 2016 | NON-FINAL ACTION WRITTEN | 76419 |
| Dec. 15, 2016 | ASSIGNED TO EXAMINER | 76419 |
| Sep. 20, 2016 | NOTICE OF PSEUDO MARK E-MAILED | |
| Sep. 17, 2016 | NEW APPLICATION OFFICE SUPPLIED DATA ENTERED IN TRAM | |
| Sep. 16, 2016 | NEW APPLICATION ENTERED IN TRAM | |

# TM Staff and Location Information

**TM Staff Information**

| | | | |
|---|---|---|---|
| **TM Attorney:** | FRENCH, CURTIS W | **Law Office Assigned:** | LAW OFFICE 115 |

**File Location**

| | | | |
|---|---|---|---|
| **Current Location:** | TMO LAW OFFICE 115 - EXAMINING ATTORNEY ASSIGNED | **Date in Location:** | Jul. 04, 2017 |

| | |
|---|---|
| **To:** | Envii, Inc. (dyu@ardentlawgroup.com) |
| **Subject:** | U.S. TRADEMARK APPLICATION NO. 87170244 - ENVII - ENVII WORD |
| **Sent:** | 7/4/2017 1:08:01 PM |
| **Sent As:** | ECOM115@USPTO.GOV |
| **Attachments:** | Attachment - 1 |
| | Attachment - 2 |
| | Attachment - 3 |
| | Attachment - 4 |
| | Attachment - 5 |
| | Attachment - 6 |
| | Attachment - 7 |
| | Attachment - 8 |
| | Attachment - 9 |
| | Attachment - 10 |
| | Attachment - 11 |
| | Attachment - 12 |
| | Attachment - 13 |
| | Attachment - 14 |
| | Attachment - 15 |
| | Attachment - 16 |
| | Attachment - 17 |
| | Attachment - 18 |
| | Attachment - 19 |
| | Attachment - 20 |
| | Attachment - 21 |
| | Attachment - 22 |
| | Attachment - 23 |
| | Attachment - 24 |
| | Attachment - 25 |
| | Attachment - 26 |
| | Attachment - 27 |
| | Attachment - 28 |
| | Attachment - 29 |

## UNITED STATES PATENT AND TRADEMARK OFFICE (USPTO)
### OFFICE ACTION (OFFICIAL LETTER) ABOUT APPLICANT'S TRADEMARK APPLICATION

**U.S. APPLICATION
SERIAL NO.**  87170244

**MARK:** ENVII

**\*87170244\***

**CORRESPONDENT
ADDRESS:**
    DAVID YU
    ARDENT LAW
GROUP, P.C.
    2301 DUPONT DR.,
SUITE 510
    IRVINE, CA 92612

**CLICK HERE TO RESPOND TO THIS
LETTER:**
http://www.uspto.gov/trademarks/teas/response_forms.jsp

VIEW YOUR APPLICATION FILE

**APPLICANT:** Envii, Inc.

**CORRESPONDENT'S**
**REFERENCE/DOCKET**
**NO:**
         ENVII WORD
**CORRESPONDENT**
**E-MAIL ADDRESS:**

         dyu@ardentlawgroup.com

# OFFICE ACTION

## STRICT DEADLINE TO RESPOND TO THIS LETTER

TO AVOID ABANDONMENT OF APPLICANT'S TRADEMARK APPLICATION, THE USPTO MUST RECEIVE APPLICANT'S COMPLETE RESPONSE TO THIS LETTER **WITHIN 6 MONTHS** OF THE ISSUE/MAILING DATE BELOW.  A RESPONSE TRANSMITTED THROUGH THE TRADEMARK ELECTRONIC APPLICATION SYSTEM (TEAS) MUST BE RECEIVED BEFORE MIDNIGHT **EASTERN TIME** OF THE LAST DAY OF THE RESPONSE PERIOD.

**ISSUE/MAILING DATE: 7/4/2017**

**THIS IS A FINAL ACTION.**

This letter responds to the applicant's communication filed on June 16, 2017.

Registration was refused under Trademark Act Section 2(d), 15 U.S.C. Section 1052(d), because the mark for which registration is sought so resembles the mark shown in U.S. Registration No. 4717824 as to be likely, when used on the identified goods/services, to cause confusion, or to cause mistake, or to deceive.

The examining attorney considered the applicant's arguments carefully but finds them unpersuasive. For the reasons below, the refusal under Section 2(d) is maintained and made FINAL.

Summary of Issues that Applicant Must Address

• Refusal under Section 2(d) – Likelihood of Confusion

Refusal under Section 2(d) – Likelihood of Confusion

 Trademark Act Section 2(d) bars registration of an applied-for mark that so resembles a registered mark that it is likely a potential consumer would be confused, mistaken, or deceived as to the source of the goods and/or services of the applicant and registrant.  *See* 15 U.S.C. §1052(d). A determination of likelihood of confusion under Section 2(d) is made on a case-by-case basis and the factors set forth in *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 1361, 177 USPQ 563, 567 (C.C.P.A. 1973) aid in this determination.  *Citigroup Inc. v. Capital City Bank Grp., Inc.*, 637 F.3d 1344, 1349, 98 USPQ2d 1253, 1256 (Fed. Cir. 2011) (citing *On-Line Careline, Inc. v. Am. Online, Inc.*, 229 F.3d 1080, 1085, 56 USPQ2d 1471, 1474 (Fed. Cir. 2000)).  Not all the *du Pont* factors, however, are necessarily relevant or of equal weight, and any one of the factors may control in a given case, depending upon the evidence of record.  *Citigroup Inc. v. Capital City Bank Grp., Inc.*, 637 F.3d at 1355, 98 USPQ2d at 1260; *In re Majestic Distilling Co.*, 315 F.3d 1311, 1315, 65 USPQ2d 1201, 1204 (Fed. Cir. 2003); *see In re E. I. du Pont de Nemours & Co.*, 476 F.2d at 1361-62, 177 USPQ at 567.

In this case, the following factors are the most relevant:  similarity of the marks, similarity and nature of the goods and/or services, and similarity of the trade channels of the goods and/or services.  *See In re Viterra Inc.*, 671 F.3d 1358, 1361-62, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012); *In re Dakin's Miniatures Inc.* , 59 USPQ2d 1593, 1595-96 (TTAB 1999); TMEP §§1207.01 *et seq.*

Applicant seeks to register the proposed mark ENVII.  The cited registration is for the mark ENVY.  These marks are quite similar in sound and connotation, and they create confusingly similar commercial impressions.

The applicant contends that the marks are dissimilar in their entireties, arguing that the marks are visually different, are not pronounced the same and have different commercial impressions.  The applicant argues that the term ENVII would have a different pronunciation than the term ENVY.  There is no correct pronunciation of a mark because it is impossible to predict how the public will pronounce a particular mark.  *See*

*Embarcadero Techs., Inc. v. RStudio, Inc.*, 105 USPQ2d 1825, 1835 (TTAB 2013) (quoting *In re Viterra Inc.*, 671 F.3d 1358, 1367, 101 USPQ2d 1905, 1912 (Fed. Cir. 2012); *In re The Belgrade Shoe Co.*, 411 F.2d 1352, 1353, 162 USPQ 227, 227 (C.C.P.A. 1969)); TMEP §1207.01(b)(iv). **The marks in question could clearly be pronounced the same; such similarity in sound alone may be sufficient to support a finding that the marks are confusingly similar.** *In re White Swan Ltd.*, 8 USPQ2d 1534, 1535 (TTAB 1988); *see In re 1st USA Realty Prof'ls, Inc.* , 84 USPQ2d 1581, 1586 (TTAB 2007); TMEP §1207.01(b)(iv).

Similarity in sound alone may be sufficient to support a finding that the marks are confusingly similar. *In re White Swan Ltd.*, 8 USPQ2d 1534, 1535 (TTAB 1988); *see In re 1st USA Realty Prof'ls, Inc.* , 84 USPQ2d 1581, 1586 (TTAB 2007); TMEP §1207.01(b)(iv). The applicant's website is www.vapeenvi.com. Consumers may read and pronounce the name of the website as VAPE ENVY .COM. The applicant provided a copy of its website in its response of June 16, 2017. The examining attorney attaches copies of articles illustrating that consumers do in fact pronounce the applicant's mark as ENVY. A review for the applicant's goods reads "[t]he Artisan RTA comes from US based ENVII (pronounced ENVY). . ." This evidence also shows that the marks have the same commercial impression. The applicant's mark clearly connotes the term ENVY. For instance, one of the attached articles uses the wording "green with envy" when describing the applicant's goods. Another article reviewing the applicant's product states "The Loch Ness Envii will give you mod envy." Consumers view the term ENVII to connote the term ENVY.

The goods and/or services of the parties need not be identical or even competitive to find a likelihood of confusion. *See On-line Careline Inc. v. Am. Online Inc.*, 229 F.3d 1080, 1086, 56 USPQ2d 1471, 1475 (Fed. Cir. 2000); *Recot, Inc. v. Becton*, 214 F.3d 1322, 1329, 54 USPQ2d 1894, 1898 (Fed. Cir. 2000) ("[E]ven if the goods in question are different from, and thus not related to, one another in kind, the same goods can be related in the mind of the consuming public as to the origin of the goods."); TMEP §1207.01(a)(i).

The respective goods and/or services need only be "related in some manner and/or if the circumstances surrounding their marketing are such that they could give rise to the mistaken belief that [the goods and/or services] emanate from the same source." *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1369, 101 USPQ2d 1713, 1722 (Fed. Cir. 2012) (quoting *7-Eleven Inc. v. Wechsler*, 83 USPQ2d 1715, 1724 (TTAB 2007)); TMEP §1207.01(a)(i).

Applicant seeks to register its mark for "Electronic cigarette boxes; Electronic cigarettes." Registrant's goods are "electronic hookahs; smokeless cigar vaporizer pipes; and smokeless cigarette vaporizer pipe." These goods are closely related because they are electronic cigarettes.

The applicant argues that while their goods and the goods of the registrant are both classified in INT. CLASS 34, this does not lead to the conclusion that the goods are highly related. The examining attorney specified that the goods are related because they are both electronic cigarettes, not because they are in the same class. The examining attorney attaches webpages from the applicant's website as well as the registrant's website, illustrating that the goods are highly related and identical in some cases. Both offer e-cigarette tanks and atomizers. Please note, where the goods and/or services of an applicant and registrant are identical or virtually identical, the degree of similarity between the marks required to support a finding of likelihood of confusion is not as great as in the case of diverse goods and/or services. *See In re Bay State Brewing Co.,* 117 USPQ2d 1958, 1960 (TTAB 2016) (citing *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1368, 101 USPQ2d 1713, 1721 (Fed. Cir. 2012)); *United Global Media Grp., Inc. v. Tseng*, 112 USPQ2d 1039, 1049 (TTAB 2014) (quoting *Century 21 Real Estate Corp. v. Century Life of Am.*, 970 F.2d 874, 877, 23 USPQ2d 1698, 1701 (Fed. Cir. 1992)); TMEP §1207.01(b).

The applicant argues that the goods would not be confused because its customers are sophisticated consumers. The fact that purchasers are sophisticated or knowledgeable in a particular field does not necessarily mean that they are sophisticated or knowledgeable in the field of trademarks or immune from source confusion. TMEP §1207.01(d)(vii); *see, e.g., Stone Lion Capital Partners, LP v. Lion Capital LLP*, 746 F.3d. 1317, 1325, 110 USPQ2d 1157, 1163-64 (Fed. Cir. 2014); *Top Tobacco LP v. N. Atl. Operating Co.*, 101 USPQ2d 1163, 1170 (TTAB 2011).

Neither the application nor the registration(s) contains any limitations regarding trade channels for the goods and therefore it is assumed that registrant's and applicant's goods are sold everywhere that is normal for such items. Thus, it can also be assumed that the same classes of purchasers shop for these items and that consumers are accustomed to seeing them sold under the same or similar marks. *See Kangol Ltd. v. KangaROOS U.S.A., Inc.*, 974 F.2d 161, 23 USPQ2d 1945 (Fed. Cir. 1992); *In re Smith & Mehaffey*, 31 USPQ2d 1531 (TTAB 1994); TMEP §1207.01(a)(iii).

Lastly, the applicant argues that it has been in business since 2016 and is unaware of any instances of actual confusion. The test under Trademark Act Section 2(d) is whether there is a likelihood of confusion. It is not necessary to show actual confusion to establish a likelihood of confusion. *Herbko Int'l, Inc. v. Kappa Books, Inc.* , 308 F.3d 1156, 1165, 64 USPQ2d 1375, 1380 (Fed. Cir. 2002) (citing *Giant Food, Inc. v. Nation's Foodservice, Inc.* , 710 F.2d 1565, 1571, 218 USPQ 390, 396 (Fed. Cir. 1983)); TMEP §1207.01(d)(ii). The Trademark Trial and Appeal Board stated as follows:

> [A]pplicant's assertion that it is unaware of any actual confusion occurring as a result of the contemporaneous use of the marks of applicant and registrant is of little probative value in an ex parte proceeding such as this where we have no evidence pertaining to the nature and extent of the use by applicant and registrant (and thus cannot ascertain whether there has been ample opportunity for confusion

to arise, if it were going to); and the registrant has no chance to be heard from (at least in the absence of a consent agreement, which applicant has not submitted in this case).

*In re Kangaroos U.S.A.*, 223 USPQ 1025, 1026-27 (TTAB 1984).

In view of all of the foregoing, the refusal pursuant to Trademark Act Section 2(d) is repeated and made FINAL.

<u>Proper Response to a Final Action</u>

Applicant must respond within six months of the date of issuance of this final Office action or the application will be abandoned.  15 U.S.C. §1062(b); 37 C.F.R. §2.65(a).  Applicant may respond by providing one or both of the following:

(1)     a response filed using the Trademark Electronic Application System (TEAS) that fully satisfies all outstanding requirements and/or resolves all outstanding refusals; and/or

(2)     an appeal to the Trademark Trial and Appeal Board filed using the Electronic System for Trademark Trials and Appeals (ESTTA) with the required filing fee of $200 per class.

37 C.F.R. §2.63(b)(1)-(2); TMEP §714.04; *see* 37 C.F.R. §2.6(a)(18); TBMP ch. 1200.

In certain rare circumstances, an applicant may respond by filing a petition to the Director pursuant to 37 C.F.R. §2.63(b)(2) to review procedural issues.  TMEP §714.04; *see* 37 C.F.R. §2.146(b); TBMP §1201.05; TMEP §1704 (explaining petitionable matters).  There is a fee required for filing a petition.  37 C.F.R. §2.6(a)(15).

**TEAS PLUS OR TEAS REDUCED FEE (TEAS RF) APPLICANTS – TO MAINTAIN LOWER FEE, ADDITIONAL REQUIREMENTS MUST BE MET, INCLUDING SUBMITTING DOCUMENTS ONLINE:**  Applicants who filed their application online using the lower-fee TEAS Plus or TEAS RF application form must (1) file certain documents online using TEAS, including responses to Office actions (see TMEP §§819.02(b), 820.02(b) for a complete list of these documents); (2) maintain a valid e-mail correspondence address; and (3) agree to receive correspondence from the USPTO by e-mail throughout the prosecution of the application.  *See* 37 C.F.R. §§2.22(b), 2.23(b); TMEP §§819, 820.  TEAS Plus or TEAS RF applicants who do not meet these requirements must submit an additional processing fee of $125 per class of goods and/or services.  37 C.F.R. §§2.6(a)(1)(v), 2.22(c), 2.23(c); TMEP §§819.04, 820.04.  However, in certain situations, TEAS Plus or TEAS RF applicants may respond to an Office action by authorizing an examiner's amendment by telephone or e-mail without incurring this additional fee.

/Curtis French/
Trademark Attorney
Law Office 115
571-272-9472
curtis.french@uspto.gov

**TO RESPOND TO THIS LETTER:**  Go to http://www.uspto.gov/trademarks/teas/response_forms.jsp.  Please wait 48-72 hours from the issue/mailing date before using the Trademark Electronic Application System (TEAS), to allow for necessary system updates of the application.  For *technical* assistance with online forms, e-mail TEAS@uspto.gov.  For questions about the Office action itself, please contact the assigned trademark examining attorney.  **E-mail communications will not be accepted as responses to Office actions; therefore, do not respond to this Office action by e-mail.**

**All informal e-mail communications relevant to this application will be placed in the official application record.**

**WHO MUST SIGN THE RESPONSE:**  It must be personally signed by an individual applicant or someone with legal authority to bind an applicant (i.e., a corporate officer, a general partner, all joint applicants).  If an applicant is represented by an attorney, the attorney must sign the response.

**PERIODICALLY CHECK THE STATUS OF THE APPLICATION:**  To ensure that applicant does not miss crucial deadlines or official notices, check the status of the application every three to four months using the Trademark Status and Document Retrieval (TSDR) system at http://tsdr.uspto.gov/.  Please keep a copy of the TSDR status screen.  If the status shows no change for more than six months, contact the Trademark Assistance Center by e-mail at TrademarkAssistanceCenter@uspto.gov or call 1-800-786-9199.  For more information on checking status, see http://www.uspto.gov/trademarks/process/status/.

**TO UPDATE CORRESPONDENCE/E-MAIL ADDRESS:** Use the TEAS form at http://www.uspto.gov/trademarks/teas/correspondence.jsp.

http://www.blogarama.com/guides-blogs/261796-best-cigarette-reviews-2016-cig-vape-brand-blog/20954922-envii-ar
tisan-rta-reviewed          06/29/2017 08:08:35 PM



http://www.bloggrama.com/guides-blogs/261756-best-cigarette-reviews-2016-cig-vape-brand-blog/20954922-envii-ar
tisan-rta-reviewed          06/29/2017 08:08:35 PM



So, without further a do lets get up close and personal with the Artisan RTA by Envii.

Use Code AECIGCLICK for 15% Off

View Full Product Details

## What's In The Box

### Related Articles

- 1 x Artisan RTA
- RBA ring
- 1 x Spare parts bag
  - O Rings
  - Grub No
  - 1
  - Screws
  - Allen/hex Key
- 1 x User Manual

Editor Fave: Ravishing Jewelry Custom...

GETTING YOUR WI-FI FIX IN THE METRO-E...

Penang Street Art --The Story behind t...

Favorite Booth Displays, Products and...

Ears the News: July 15, 2016 Edition

## Features

- Diameter: 22mm
- Height: 46mm
- Capacity: 3ml
- Thread: 510
- Material: Press Glass + Stainless Steel
- Adjustable Airflow
- Top Filling
- Removable Post-less deck
- Reduced size chamber

## Build Quality & Design

On first inspection, you wouldn't be wrong to think that the Envii Artisan Rta is a bit of a 'Plain Jane'.

In fact there's nothing visually striking about it, even down to the 'envii' branding and device name which are ever so subtly engraved and the base of the RTA. And that's not a bad thing!!

http://www.blogarama.com/guides-blogs/261755-best-cigarette-reviews-2016-cig-vape-brand-blog/20954922-anvil-ar
tisan-rta-reviewed          05/28/2017 08:08:35 PM



The Artisan is primarily of a stainless steel construction centred with a pyrex glass tank section.

Size wise, the RTA measures 22mm in diameter and 40mm high, excluding the threaded 510 connection, so it will probably look a little lost on a large vape mod.

The drip-tip is constructed from black delrin with an internal bore of approximately 9mm and connects to the top cap by means of a friction fit, so no o-rings. You can of course use your own drip-tips as the top cap is 510 compatible.

http://www.blogarama.com/guides-blogs/261756-best-cigarette-reviews-2016-cig-vape-brand-blog/30954922-envii-ar
tisan-rta-reviewed        05/29/2017 08:08:35 PM

Internally, we have the chimney section which runs down from the top cap to a small chamber housing containing the RBA deck. On each side of the chamber there are two generously sized juice ports each measuring approx. 3.0×3.5mm.

The base section of the RTA contains dual cyclops air flow control ring, with each air flow hole measuring 13.0×1.0mm.

Now onto where the magic happens, the RBA deck.



The deck of the Artisan is very compact but very well thought out! Completely pinless, and with a central airflow channel which directs the air from below to hit both side of the coil.

Your coil is positioned so that the coil legs drop down into the deck and are then held in place with two small grub hex screws. Simple!!



Now, you're probably think, how do you pulse and pinch your coil once it's installed into the deck. Well Envii have thought of that too!

Provided in the box there is a RBA ring, which allows you to connect the deck to the base section of the tank for just that purpose. Smart or what!

http://www.blogarama.com/guides-blogs/261795-best-cigarette-reviews-2016-cig-vape-brand-blog/39954922-revil-artisan-rta-reviewed          05/29/2017 08:08:35 PM



So, that the design and build done now let's move on to the Artisan's performance.

### How Does The Artisan RTA Perform?

I very quickly discovered that when wicking the Artisan you really do need to keep your cotton nice and fluffy, as the juice ports on the chamber are deceivingly big.

For my build I was using a pre-built 3.0mm diameter 'Tiger Coil' which came in at 3.5ohms and for wicking it was my firm favourite, some 'Envii Vape Cotton – Gold Edition'.

http://www.bloggrama.com/guides-blogs/261796-best-cigarette-reviewn-2016-cig-vape-brand-blog/20954922-envii-ar
tisan-rta-reviewed          05/29/2017 08:08:35 PM



For this review I was using a 80-20 VG/PG e-liquid which I have been good friends with for quite some time, so I knew exactly how it will vape :)

Wattage was set at a modest 40watts to start with, airflow open to about half way.

All I can say is WOW!!! Flavour was exceptionally good as was vapour production with nice thick clouds.

Cranking the wattage up to 55watts and completely open the airflow produced some incredibly good flavour. Vapour production was dense and creamy.

Mouth To Lung (MTL) vaping was achievable on the Artisan albeit a very loose draw, but still quite enjoyable.

## What I Liked

In simple terms 'EVERYTHING'!! Yes I like all aspects of the Envii Artisan RTA. Building it was relatively straightforward; just remember to keep that cotton nice and fluffy.

Flavour and vapour production were a complete surprise to me! I had expected it to be pretty average, but I'm very pleased to say that I was proved wrong on that score.

I would definitely put the Artisan RTA in the same category as something like the Eden Mods Rose :)

## What I Didn't Like

I'm finding it difficult to find anything I didn't like about the Artisan RTA. I've had no real issues with the device, apart from some error :)

http://www.blogarama.com/guides-blogs/261796-best-cigarette-reviewin-2016-cig-vape-brand-blog/20954922-envii-ar
tisan-rta-reviewed          05/29/2017 08:08:35 PM



OK, maybe some knurling on the top cap for us folk with chunky fingers but that's it!!

### Final Review Verdict

It may look like a 'Plain Jane' but in truth the Artisan by Envii is a well designed and engineered RTA which provides exceptionally good flavour and vapour production.

Top of the list for RTA recommendations.

## Pros

- Well designed & great build quality
- Straightforward to build on the deck
- Exceptionally good flavour and vapour production
- Smooth airflow
- Suits direct lung and (loose) mouth to lung

## Cons

http://www.blogarama.com/guides-blogs/261795-best-cigarette-reviews-2016-cig-vape-brand-blog/20054922-envii-artisan-rta-reviewed          05/29/2017 08:08:35 PM

- No knurling on top cap

Use Code AECIGCLICK for 15% Off

View Full Product Details

The post Envii Artisan RTA Reviewed appeared first on Ecigclick.

*This post first appeared on Best E Cigarette Reviews 2016, E Cig Vape Brand Co, please read the original post: here*

**People also like**


Editor Fave: Revisiting Jewelry Custom Hand Stamped Skinny Cuff


GETTING YOUR WI-FI FIX IN THE METRO-EAST


Penang Street Art –The Story behind the Success.

http://www.blogarama.com/guides-blogs/261795-best-cigarette-reviews-2016-cig-vape-brand-blog/20954922-revu-ar
bogny-rta-reviewed          05/29/2017 08:08:35 PM



Rubis: A dose of "vitamin C" to start the day!

Artisan Bread | Recipe

Brandini Artisan Toffee, 2 lb Bag Was: $49 Now: $29.99

The Blue Evil Eye in Turkey

Blogarama

Hosted by Bluehost

© 2001-2017 Blogarama.com  |  All rights reserved





## What's In The Box

- 1 x Artisan RTA
- RBA ring
- Spare glass tank
- 1 x Spare parts bag
  - O-Rings
  - Allen/hex key
  - 1 x User Manual

## Features

- Diameter: 22mm
- Height: 46mm
- Capacity: 3ml
- Thread: 510
- Material: Pyrex Glass + Stainless Steel

http://www.ecigclick.co.uk/envii-artisan-rta-reviewed/      06/29/2017 08:11:08 PM

- Adjustable Airflow
- Top Filling
- Removable Post-less deck
- Reduced size chamber

We use cookies to ensure that we give you the best experience on our website. If you continue to use this site we will assume that you are happy with it.   Ok

## Build Quality & Design

On first inspection, you wouldn't be wrong in think that the Envii Artisan RTA is a bit of a 'Plain Jane'.

In fact there's nothing visually striking about it, even down to the 'envii' branding and device name which are ever so subtly engraved and the base of the RTA. And that's not a bad thing!!

We use cookies to ensure that we give you the best experience on our website. If you continue to use this site we will assume that you are happy with it.   Ok



ecigclick

The Artisan is primarily of a stainless steel construction centred with a pyrex glass tank section.

Size wise, the RTA measures 22mm in diameter and 46mm high, excluding the threaded 510 connection, so it will probably look a little lost on a large vape mod.

Drip Tip

We use cookies to ensure that we give you the best experience on our website. If you continue to use this site we will assume that you are happy with it.   Ok

http://www.ecigclick.co.uk/erval-artisan-rta-reviewed/          06/29/2017 08:11:08 PM



The drip-tip is constructed from black delrin with an internal bore of approximately 9mm and connects to the top cap by means of a friction fit, so no o-rings. You can of course use your

We use cookies to ensure that we give you the best experience on our website. If you continue to use this site we will assume that you are happy with it.   Ok



Internally, we have the chimney section which runs down from the top cap to a small chamber housing containing the RBA deck. On each side of the chamber there are two generously sized juice ports each measuring approx. 3.0x3.5mm.

The base section of the RTA contains dual cyclops air flow control ring, with each air flow hole

We use cookies to ensure that we give you the best experience on our website. If you continue to use this site we will assume that you are happy with it.   Ok

Now onto where the magic happens, the RBA deck.



We use cookies to ensure that we give you the best experience on our website. If you continue to use this site we will assume that you are happy with it.   Ok

The deck of the Artisan is very compact but very well thought out! Completely postless, and with a central airflow channel which directs the air from below to hit both side of the coil.

Your coil is positioned so that the coil legs drop down into the deck and are then held in place with two small grub/hex screws. Simple!!



We use cookies to ensure that we give you the best experience on our website. If you continue to use this site we will assume that you are happy with it.   Ok

ecigclick

Now, you're probably think, how do you pulse and pinch your coil once it's installed into the deck. Well Envi have thought of that too!

Provided in the box there is a RBA ring, which allows you to connect the deck to the base section of the tank for just that purpose. Smart or what!



We use cookies to ensure that we give you the best experience on our website. If you continue to use this site we will assume that you are happy with it.   Ok

ecigclick

So, that the design and build done now let's move on to the Artisan's performance.

## How Does The Artisan RTA Perform?

I very quickly discovered that when wicking the Artisan you really do need to keep your cotton nice and fluffy, as the juice ports on the chamber are deceivingly big.

We use cookies to ensure that we give you the best experience on our website. If you continue to use this site we will assume that you are happy with it.   Ok



ecigclick

For my build I was using a pre-built 3.0mm diameter 'Tiger Coil' which came in at 3.5ohms and for wicking it was my firm favourite, some 'Kendo Vape Cotton – Gold Edition'.

We use cookies to ensure that we give you the best experience on our website. If you continue to use this site we will assume that you are happy with it.   Ok



For this review I was using a 80/20 VG/PG e-liquid which I have been good friends with for quite some time, so I know exactly how it will vape )

Wattage was set at a modest 45watts to start with, airflow open to about half way.

We use cookies to ensure that we give you the best experience on our website. If you continue to use this site we will assume that you are happy with it.   Ok

All I can say is WOW!! Flavour was exceptionally good as was vapour production with nice thick clouds.

Cranking the wattage up to 55watts and completely open the airflow produced some incredibly good flavour. Vapour production was dense and creamy.

Mouth To Lung (MTL) vaping was achievable on the Artisan albeit a very loose draw, but still quite enjoyable.

## What I Liked

In simple terms 'EVERYTHING'!! Yes I like all aspects of the Envii Artisan RTA. Building it was relatively straightforward; just remember to keep that cotton nice and fluffy.

We use cookies to ensure that we give you the best experience on our website. If you continue to use this site we will assume that you are happy with it.   Ok



http://www.ecigclick.co.uk/erval-artisan-rta-reviewed/          06/29/2017 08:11:08 PM

ecigclick

Flavour and vapour production were a complete surprise to me! I had expected it to be pretty average, but I'm very pleased to say that I was proved wrong on that score.

I wound definitely put the Artisan RTA in the same category as something like the Eden Mods Rose J

We use cookies to ensure that we give you the best experience on our website. If you continue to use this site we will assume that you are happy with it.  Ok

## What I Didn't Like

I'm finding it difficult to find anything I didn't like about the Artisan RTA. I've had no real issues with the device, apart from users error :)



We use cookies to ensure that we give you the best experience on our website. If you continue to use this site we will assume that you are happy with it.  Ok

ecigclick

OK, maybe some knurling on the top cap for us folk with chunky fingers but that's it!

## Final Review Verdict



http://www.ecigclick.co.uk/envii-artisan-rta-reviewed/          06/29/2017 08:11:08 PM

We use cookies to ensure that we give you the best experience on our website. If you continue to use this site we will assume that you are happy with it.   OK

ecigclick

It may look like a 'Plain Jane' but in truth the Artisan by Envii is a well designed and engineered
RTA which provides exceptionally good flavour and vapour production.

Top of the list for RTA recommendations.

## Pros

- Well designed & great build quality

We use cookies to ensure that we give you the best experience on our website. If you continue to use this site we will assume that you are happy with it.   OK

- Exceptionally good flavour and vapour production
- Smooth airflow
- Suits direct lung and (loose) mouth to lung

## Cons

- No knurling on top cap

Use Code AECIGCLICK for 15% Off

View Full Product Details

We use cookies to ensure that we give you the best experience on our website. If you continue to use this site we will assume that you are happy with it.   OK

REVIEW OVERVIEW

Build Quality

http://www.ecigclick.co.uk/envii-artisan-rta-reviewed/          06/29/2017 08:11:00 PM

| | |
|---|---|
| Design | |
| Ease of use | |
| Flavour | |
| Vapour | |
| Likelihood of replacing if lost or damaged | |

| SUMMARY | **4.6** |
|---|---|
| A great little RTA, full of flavour & vapour. Highly recommended. | OVERALL SCORE |

We use cookies to ensure that we give you the best experience on our website. If you continue to use this site we will assume that you are happy with it.   Ok

Facebook   Twitter

👍 Like 5

Saved

**Mike Murphy**

Smoker for 25 years but now a seasoned vaper of four years. Started my vape journey on Cig-a-likes before moving very swiftly onto CE4's and Ego's, which were to remain my preferred vaping hardware for a considerable length of time. When the infamous Nautilus clearomizer was released I move completely away from my beloved CE4 and also dumped my Ego for a tube type variable wattage device. Shortly after this I was on to RTA's, RDA's, VW mods and rebuilding. Recently I discovered the joys of SquonKing and have become completely hooked.

We use cookies to ensure that we give you the best experience on our website. If you continue to use this site we will assume that you are happy with it.   Ok



Geekvape Ammit 25mm RTA Reviewed



Envii Terra RTA Review – 8 Coil RTA

https://vapetraveller.com/2017/06/02/the-loch-ness-envii-will-give-you-mod-envy-ergonomic-vaping-at-its-finest
-youtube/          06/29/2017 06:11:42 PM





## VAPE TRAVELLER

JUNE 6, 2017 VAPETRAVELLER BOX MODS, OHNBOY JOSH, TC MODS, USA

### The Loch Ness Envii Will Give you Mod Envy | Ergonomic Vaping at its Finest – YouTube





https://vapetraveller.com/2017/06/03/the-loch-ness-envii-will-give-you-mod-envy-ergonomic-vaping-at-its-finest
-youtube/          06/29/2017 06:11:42 PM



Advertisements

**Share this:**

Twitter

Facebook

Google



PUBLISHED BY
**vapetraveller**

View all posts by vapetraveller

https://vapetraveler.com/2017/06/03/the-loch-ness-enwi-will-give-you-mod-envy-ergonomic-vaping-at-its-finest
-youtube/          06/29/2017 08:11:42 PM

**Leave a Reply**

Enter your comment here...

IJOY CAPTAIN PD270 | #PERFOMANCEMONSTER – OHMMACHT – YOUTUBE

รีว AMMIT DUAL COIL VERSION BY GEEKVAPE – YOUTUBE

Sponsored Link



Gearbest Flash Sale

https://vapetraveler.com/2017/06/03/the-loch-ness-envi-will-give-you-mod-envy-ergonomic-vaping-at-its-finest
-youtube/          06/29/2017 08:11:42 PM

**Instagram**







https://vapetraveler.com/2017/06/03/the-loch-ness-envii-will-give-you-mod-envy-ergonomic-vaping-skills-finest
-youtube/        06/29/2017 08:11:42 PM

 

 

**Blog Stats**

- 112,531 hits

**Follow Blog via Email**

Enter your email address to follow this blog and receive notifications of new posts by email.

Join 783 other followers

[ FOLLOW ]

**Follow me on Twitter**



https://www.envycig.com/product-category/envy-electronic-cigarettes/          09/29/2017 10:29:02 PM







https://www.envycig.com/product-category/envy-tanks/   05/29/2017 10:29:26 PM



Warning

Products sold on this site are not medical devices and are not intended to cure, treat or prevent any disease or other conditions. These products do not claim any therapeutic benefits. Consult your physician before using products sold on this site or any other similar product. Immediately discontinue use of any product if you experience any negative symptom. Products sold on this site should not be used by those under the legal age for smoking in the state where purchase is made. Products sold on this site are not intended to administer medicinal or illegal products. The use of illegal products could subject the user to severe fines, penalties, and/or imprisonment under the laws of your jurisdiction. The manufacturer is not responsible for any damage, personal injury, or any related claim resulting from inappropriate, incorrect, or irresponsible use of these products. The statements made here have not been evaluated by the USA Food and Drug Administration. Small parts can present a choking hazard. Keep out of reach of children and pets.

Copyright 2017 - Envy® Electronic Cigarettes. 8921 Harlan Street, Suite 1,
Westminster, Colorado, 80031

| To: | Envii, Inc. (dyu@ardentlawgroup.com) |
| --- | --- |
| Subject: | U.S. TRADEMARK APPLICATION NO. 87170244 - ENVII - ENVII WORD |
| Sent: | 7/4/2017 1:08:03 PM |
| Sent As: | ECOM115@USPTO.GOV |
| Attachments: | |

## UNITED STATES PATENT AND TRADEMARK OFFICE (USPTO)

## <u>IMPORTANT NOTICE REGARDING YOUR<br>U.S. TRADEMARK APPLICATION</u>

USPTO OFFICE ACTION (OFFICIAL LETTER) HAS ISSUED
ON **7/4/2017** FOR U.S. APPLICATION SERIAL NO. 87170244

Please follow the instructions below:

**(1) TO READ THE LETTER:** Click on this link or go to http://tsdr.uspto.gov, enter the U.S. application serial number, and click on "Documents."

The Office action may not be immediately viewable, to allow for necessary system updates of the application, but will be available within 24 hours of this e-mail notification.

**(2) TIMELY RESPONSE IS REQUIRED:** Please carefully review the Office action to determine (1) how to respond, and (2) the applicable response time period. Your response deadline will be calculated from **7/4/2017** (*or sooner if specified in the Office action*). A response transmitted through the Trademark Electronic Application System (TEAS) must be received before midnight **Eastern Time** of the last day of the response period. For information regarding response time periods, see http://www.uspto.gov/trademarks/process/status/responsetime.jsp.

**Do NOT hit "Reply" to this e-mail notification, or otherwise e-mail your response** because the USPTO does NOT accept e-mails as responses to Office actions. Instead, the USPTO recommends that you respond online using the TEAS response form located at http://www.uspto.gov/trademarks/teas/response_forms.jsp.

**(3) QUESTIONS:** For questions about the contents of the Office action itself, please contact the assigned trademark examining attorney. For *technical* assistance in accessing or viewing the Office action in the Trademark Status and Document Retrieval (TSDR) system, please e-mail TSDR@uspto.gov.

## <u>WARNING</u>

**Failure to file the required response by the applicable response deadline will result in the ABANDONMENT of your application.** For more information regarding abandonment, see http://www.uspto.gov/trademarks/basics/abandon.jsp**.**

**PRIVATE COMPANY SOLICITATIONS REGARDING YOUR APPLICATION:** Private companies **not** associated with the USPTO are using information provided in trademark applications to mail or e-mail trademark-related solicitations. These companies often use names that closely resemble the USPTO and their solicitations may look like an official government document. Many solicitations require that you pay "fees."

Please carefully review all correspondence you receive regarding this application to make sure that you are responding to an official document from the USPTO rather than a private company solicitation. All official USPTO correspondence will be mailed only from the "United States Patent and Trademark Office" in Alexandria, VA; or sent by e-mail from the domain "@uspto.gov." For more information on how to handle private company solicitations, see http://www.uspto.gov/trademarks/solicitation_warnings.jsp.