UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:18-cv-00190-JVS-KES | Date | March 27, 2019 |
| Title | Nicholas Van Burren v. Envii, Inc. et al. | | |

| | |
|---|---|
| Present: The Honorable | James V. Selna |

| | |
|---|---|
| Lisa Bredahl/Rolls Royce Paschal | |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** [IN CHAMBERS] <u>Order Regarding Application for Default Judgment</u>

Plaintiff Nicholas Van Burren ("Van Burren") provided supplemental documentation to the Court following his motion for entry of default judgment against Envii, Inc. ("Envii") and for attorneys' fees and costs. (Memo., Docket No. 29.)

For the following reasons, the Court **grants** Van Burren's application for default judgment for corrective advertising and **grants** the motion for attorneys' fees and costs.

## I. Background

Van Burren alleges the following. Van Burren is an innovator, manufacturer, and retail seller of smoking articles, smoking devices, structural parts for smoking devices, and smoking accessories. (Complaint, Docket No. 1 ¶ 13.) Van Burren has promoted and sold such products with the trademark "ENVY" prominently featured since as early as 2008 and has continuously used the mark since that time. (Id. ¶ 14.) Van Burren's ENVY Mark is well known and recognized among consumers within the relevant industry. (Id.)

Van Burren has promoted and sold products featuring the ENVY Mark through both online and brick-and-mortar channels of trade in every state within the United States. (Id. ¶ 16.) Van Burren has invested to extensively advertise and promote his goods and services featuring the ENVY Mark throughout the United States through online marketing, radio advertising, print advertising, and attendance at trade shows. (Id. ¶ 18.) Van Burren obtained a trademark registration from the U.S. Patent and Trademark Office for the ENVY trademark in a standard character format on April 7, 2015. (Id. ¶ 19, Ex. B, C.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:18-cv-00190-JVS-KES | Date | March 27, 2019 |
| Title | Nicholas Van Burren v. Envii, Inc. et al. | | |

Envii promotes and sells products in direct competition with Van Burren, including smoking articles and devices, which are sold under the trademark "ENVII." (Id. ¶¶ 21-22.) Van Burren has priority over Envii because Envii's claimed date of first use is August 1, 2016. (Id., Ex. E.) Envii was put on notice by the U.S. Patent and Trademark Office ("PTO") on December 16, 2016 that the ENVII mark was likely to cause confusion with the ENVY mark. (Id., Ex. G.) Envii argued against the refusal in vain on June 16, 2017, representing that the mark was not pronounced as two syllables, and contradicting the pronunciations of the Envii name by individuals associated with Envii in videos featuring the owners of the company. (Id. ¶ 29.) The PTO issued a final refusal on July 4, 2017, maintaining that "[t]he marks in question could clearly be pronounced the same." (Id., Ex. I.)

On or about August 4, 2017, Van Burren transmitted a written cease and desist letter to Envii stating that the use of the ENVII Mark was likely to cause confusion. (Id. ¶ 32.) Van Burren demanded that Envii refrain from attending an industry trade show that was to take place on August 25, 2017. (Id.) Envii refused to comply with Van Burren's demands. (Id.)

Envii thereafter represented to Van Burren that their stylized icon includes a "v" in front of the word ENVII imbuing the mark with a pronunciation of "vhen-vee." (Id. ¶ 33.) Envii then modified the appearance of the ENVII Mark to include the v. (Id.) Envii's actual use continued to be in the infringing ENVII form of the mark, with a "v" placed above the ENVII mark. (Id.)

Van Burren is damaged by the unauthorized use of the ENVII Mark in connection with Envii's goods and services because it is similar to and so resembles Van Burren's previously used and not abandoned ENVY Marks and goods and services such that a potential consumer would be likely to be confused, mistaken, or deceived as to the source of the respective goods and services. (Id. ¶ 35.)

On February 2, 2018, Van Burren filed the Complaint. (Docket No. 1.) After Van Burren made several unsuccessful attempts to serve Envii, on April 18, 2018, the Court granted Van Burren's request and issued an order permitting Van Burren to serve Envii through the California Secretary of State. (Order, Docket No. 14.) On May 14, 2018, First Legal personally served the California Secretary of State with all the required service documents to be served on Envii. (Docket No. 16.) On May 25, 2018, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:18-cv-00190-JVS-KES | Date | March 27, 2019 |
|---|---|---|---|
| Title | Nicholas Van Burren v. Envii, Inc. et al. | | |

California Secretary of State issued a Record of Service of Process showing that the California Secretary of State had served all required service documents on Envii. (Docket No. 16-1.) Envii has failed to file any response to the Complaint, and the Clerk entered default against Envii on August 20, 2018. (Docket No. 21.)

On December 17, 2018, the Court granted in part Van Burren's application for default judgment as to the injunctive relief and award for attorneys' fees of $8,845.20 and costs of $868.82. In doing so, the Court stated, "Prior to awarding damages for corrective advertising, the Court requires additional evidence regarding the valuation of ENVY's Mark. Van Burren may also submit supplemental information regarding attorneys' fees incurred for the application for default judgment." (Order, Docket No. 28-1 at 15.)

On December 27, 2018, Van Burren submitted a supplemental memorandum in support of his application for default judgment, as well as a supplemental declaration from him and his counsel. (Memo., Docket No. 29; Van Burren Decl., Docket No. 29-1; Kinder Decl., Docket No. 29-2.)

## II. Legal Standard

Under Federal Rule of Civil Procedure 55(b)(2), a "party [may] apply to the court for a default judgment." Granting a motion for default judgment pursuant to Rule 55(b)(2) is within the discretion of the Court. Eitel v. McCool, 782 F.2d 1470, 1471 (9th Cir. 1986). The Court will consider the following factors: "(1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." Id. at 1471–72.

Local Rule 55-1 requires an application for default judgment to be accompanied by a declaration including the following information: "(a) when and against what party the default was entered; (b) the identification of the pleading to which default was entered; (c) whether the defaulting party is an infant or incompetent person . . .; (d) that the Servicemembers Civil Relief Act (50 U.S.C. App. § 521) does not apply; and (e) that notice has been served on the defaulting party, if required" by Fed. R. Civ. P. 55(b)(2).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:18-cv-00190-JVS-KES | Date | March 27, 2019 |
|---|---|---|---|
| Title | Nicholas Van Burren v. Envii, Inc. et al. | | |

Local Rule 55-2 requires notice of the amount of unliquidated damages requested be given to an opposing party in an application for default judgment. See L.R. 55-2. Evidence of the amount of damages can be submitted in the form of declarations. Id.

On an application for a default judgment, the factual allegations in the Complaint are taken as true, with the exception of those regarding damages. See Pope v. United States, 323 U.S. 1, 12 (1944); Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977).

### III. Discussion

#### A. Local Rule 55-2

The Court previously determined that Van Burren satisfied the requirements of Local Rule 55-1. (Order, Docket No. 28-1 at 4.) Since Van Burren is requesting unliquidated damages, notice to Envii of the amount of damages requested is also required. See L.R. 55-2. Counsel for Van Burren indicates that notice has been given to Envii. (Kinder Decl., Docket No. 29-2 ¶ 5, Exs. A, B, C.) Thus, the requirements of Local Rule 55-2 are also satisfied.

#### B. Relief Sought

##### 1. Corrective Advertising Compensatory Damages

"An award of the cost of corrective advertising, like compensatory damage awards in general, is intended to make the plaintiff whole. It does so by allowing the plaintiff to recover the cost of advertising undertaken to restore the value plaintiff's trademark has lost due to defendant's infringement." Adray v. Adry-Mart, Inc., 76 F.3d 984, 988 (9th Cir. 1995), as amended on denial of reh'g (Feb. 15, 1996). A prospective corrective advertising award is permissible "only to the extent that the amount of money needed for corrective advertising does not exceed the damage to the value of [the plaintiff's] mark." Id. at 989.

Van Burren initially sought: (1) $75,001 in "uncontested" damages, (2) a total of $150,000 in damages for corrective advertising for trademark infringement, false designation of origin and common law trademark infringement, (3) treble damages

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:18-cv-00190-JVS-KES | Date | March 27, 2019 |
| Title | Nicholas Van Burren v. Envii, Inc. et al. | | |

pursuant to 15 U.S.C. § 1117(a), (4) $14,922.50 in attorneys' fees and $868.82 in costs pursuant to 15 U.S.C. § 1117(a) for willful infringement, and (5) injunctive relief pursuant to 15 U.S.C. § 1116(a). The Court previously determined that the record did not support an award for "uncontested" or treble damages for trademark infringement. In addition, the Court denied without prejudice the request for compensatory damages for corrective advertising, reasoning as follows:

> [T]he Court finds that $376,259 in damages for the corrective advertising campaign would be reasonable. However, before awarding damages, the Court requires evidence that the damages sought are not greater than the value of the trademark. Van Burren has not provided sufficient information for the Court to determine the value of the ENVY trademark. . . .Van Burren does not indicate how this range of $3 to $6 million bears on the value of the ENVY Mark. Thus, the Court requires further evidence indicating the value of the ENVY Mark before it can award damages for the corrective advertisements.

(Order, Docket No. 28 at 11.) See Zazu Designs v. L'Oreal, S.A., 979 F.2d 499, 506 (7th Cir. 1992) ("To justify damages to pay for corrective advertising a plaintiff must show that the confusion caused by the defendant's mark injured the plaintiff and that 'repair' of the old trademark, rather than adoption of a new one, is the least expensive way to proceed.").

Van Burren's supplemental memorandum provides additional information regarding the Envy® trademark. Van Burren explains that he has sold his "Envy brand products in big box stores like Kmart, grocery stores like Safeway, and pretty much any type of business that sells traditional cigarettes" over the past ten years. (Van Burren Suppl. Decl., Docket No. 29-1 ¶ 3.) In particular, Van Burren asserts that "FDA regulations that became effective on August 8, 2016 have made it virtually impossible for Plaintiff to replace the Envy® trademark and (even if it were possible) the cost would be in the millions of dollars;" thus, "the cost of replacement would be vastly more expensive than simply repairing the Envy® mark through corrective advertising." (Memo., Docket No. 29 at 1.) Specifically, "the FDA now regulates the sale of electronic cigarette products and requires regulatory approval before any new product may be sold," making it difficult to replace the mark and "unquestionably enhanc[ing] the value of the Envy®

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:18-cv-00190-JVS-KES | Date | March 27, 2019 |
|---|---|---|---|
| Title | Nicholas Van Burren v. Envii, Inc. et al. | | |

brand by many millions of dollars." Id. at 2. Van Burren is "not aware of any new 'legally' created trademarks within the electronic cigarette industry" since the new regulations took effect on August 6, 2016. (Van Burren Suppl. Decl., Docket No. 29-1 ¶ 5.)

Van Burren cites Sims for the proposition that in circumstances in which it would be difficult to replace an asset, the economic waste doctrine does not apply. Id. at 3; Chem. Waste Mgmt., Inc. v. Sims, 939 F. Supp. 599, 603 (N.D. Ill. 1996). Sims states in relevant part:

> Generally, economic waste precludes awarding the cost to repair an asset where the cost of obtaining a replacement would prove less expensive. For example, it makes little sense to fix a $4,000 car crushed in an accident if repairing the car would cost $10,000. Because it is more efficient to purchase a similar car for $4,000, the court would award only $4,000 in damages to the plaintiff. . . . The economic waste doctrine, however, rests on the assumption that it is possible to replace the asset rather than repair it. Here, unlike the buyer of a new car, it is not clear that [plaintiff] could simply abandon [defendant] in favor of another company because so few companies have the equipment and government permits necessary to process liquid scintillation materials.

939 F. Supp. at 603 (citing Zazu, 979 F.2d at 506). The court determined that this factor "may weigh against applying the economic waste doctrine." Sims, 939 F. Supp. at 603. Van Burren contends that the economic waste doctrine is similarly inapplicable where, as here, it is unclear that a replacement mark is even possible. (Memo., Docket No. 29 at 2.) Even it if were possible to create a replacement mark, Van Burren asserts that the overall average cost of compiling a Premarket Tobacco Application ("PMTA") submission, as required by the new regulations, is approximately $115,464 per PMTA for E-liquids and $466,563 per PMTA for Electronic Nicotine Delivery Systems ("ENDS"). (Van Burren Suppl. Decl., Docket No. 29-1 ¶ 12, Ex. A at 88, 92.) Multiplied by ten products for each category, Van Burren calculates the total cost of replacement for twenty products to be approximately $5,820,270. (Id. ¶ 15.)

Van Burren also indicates that "[i]f the Court should so require, Plaintiff can

Case 8:18-cv-00190-JVS-KES Document 30 Filed 03/27/19 Page 7 of 9 Page ID #:502

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:18-cv-00190-JVS-KES | Date | March 27, 2019 |
|---|---|---|---|
| Title | Nicholas Van Burren v. Envii, Inc. et al. | | |

submit additional evidence of the significant sales and marketing expenditures under the Envy® brand consistent with Plaintiff's earlier declaration. However, because of the private nature of such information, Plaintiff requests the opportunity to do so under seal." Id. at 2, n. 2.

Based on Van Burren's representations regarding the expense and difficulty of replacing the Envy mark, the Court finds that "'repair' of the old trademark, rather than adoption of a new one, is the least expensive way to proceed." Zazu, 979 F.2d at 506. However, Van Burren has not presented evidence that supports his contention regarding the millions of dollars required to adopt a new mark. (Van Burren Suppl. Decl., Docket No. 29-1 ¶ 3.) First, Van Burren indicates that a PMTA is needed for each product, but the cited material suggests that multiple products may be included within a single PMTA submission. (Id. at p. 88–92.) Second, even if the products required multiple PMTA submissions, Van Burren acknowledges that subsequent PMTAs would be less costly, but his calculations—albeit based on twenty total products when he represents that he "presently sell[s] well in excess" of twenty products—do not reflect such lower costs. (Id. ¶ 14.) Nonetheless, since the "Overall average cost per PMTA including Environmental Assessment" of an ENDS submission is approximately $466,563 and the same cost for an E-Liquid submission is approximately $131,643, the total cost would be at least about $598,206. (Id. at p. 88–92.) Since replacement of the mark would cost more than the cost of the advertising campaign, and Van Burren represents that the Envy® brand is now enhanced by millions of dollars due to the regulatory environment, the Court awards the significantly lower corrective advertising campaign costs of $376,259.

### 2. Trebled Damages

Van Burren also requests that the Court exercise its discretion to treble the award for corrective advertising because Envii was on notice and its infringement was willful. (Memo., Docket No. 29 at 4.) Specifically, Van Burren asserts that Envii (1) "not only undertook a massive marketing campaign, but also sold a large amount of product in a very short time" and (2) has not participated in these proceedings, thus, Plaintiff is unable to prove the large amount of sales and profits that [Envii] achieved through the willfully infringing conduct. Id.; see Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Eastimpex, No. C 04-4146 MMC, 2007 WL 328696, at *12 (N.D. Cal. Feb. 2, 2007) (trebling damages for an award of lost manufacturing profits, corrective packaging, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:18-cv-00190-JVS-KES | Date | March 27, 2019 |
|---|---|---|---|
| Title | Nicholas Van Burren v. Envii, Inc. et al. | | |

corrective advertising when infringement was willful).

Since the Court finds that infringement was willful, the Court trebles the award for corrective advertising. Accordingly, the Court awards a total of $1,128,777.

### 3. Attorneys' Fees

Courts may award attorneys' fees to the prevailing plaintiff under the Lanham Act in "exceptional cases." Id. To determine whether a case is exceptional, courts may consider (1) "the substantive strength of a party's litigation position (considering both the governing law and the facts of the case)" and (2) "the unreasonable manner in which the case was litigated." Octane Fitness, LLC v. ICON Health & Fitness, Inc., 134 S. Ct. 1749, 1756 (2014) (interpreting the term "exceptional" in the federal Patent Act's identical fee-shifting provision).

The Court previously determined that "Van Burren has alleged that Envii willfully, intentionally, and maliciously infringed upon Envy's Mark. . . . Therefore, this case is deemed exceptional and Van Burren is entitled to an award of reasonable attorneys' fees and costs." (Order, Docket No. 28-1 at 13.) The Court awarded $8,845.20 for attorneys' fees and indicated that it "will consider awarding additional fees for time reasonably spent on the Application for Default Judgment." Id. at 15.

Van Burren's counsel submitted a supplemental declaration providing additional information on the hours spent on the Application for Default Judgment and the supplemental memorandum and accompanying documentation. (Kinder Suppl. Decl., Docket No. 29-2.) He represents:

> I spent an additional 14.1 hours in the month of November researching and drafting the application for default judgment and amendments thereto. . . . a total of 2 hours traveling to and from as well as attending the hearing on the application for default judgment on December 17, 2018[, and] an additional 6.9 hours communicating with my client and preparing this declaration, the supplemental declaration of Plaintiff, and the accompanying supplemental submission to the Court. Accordingly, I spent a total of 23 additional hours on this matter. Based on a multiple of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:18-cv-00190-JVS-KES | Date | March 27, 2019 |
| Title | Nicholas Van Burren v. Envii, Inc. et al. | | |

        my applicable $350.00 hourly rate, the total additional attorneys' fees is $8,050. Combining the earlier $8,845.20 with the additional $8,050.00 amounts to a grant total of $16,895.20.

Id. ¶ 3.

      The Court finds that the time spent traveling and preparing the default application and supplemental materials was reasonable, and the Court has already approved the $350.00 per hour fee for Van Burren's counsel. Accordingly, the Court awards the requested $16,895.20.

**IV.**    **Conclusion**

      For the foregoing reasons, the Court grants Van Burren's request for corrective advertising damages trebled in the total amount of **$1,128,777** and attorneys' fees in the total amount of **$16,895.20**, which includes the $8,845.20 in fees that the Court previously approved. (See Order, Docket No. 28-1 at 15.)

      **IT IS SO ORDERED.**

| | : | 0 |
|---|---|---|
| Initials of Preparer | lmb/rrp | |